No. 93-463

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


J.M., JR. individually and by
his parents, and next friends,
J.M. and S.M.,

     Plaintiffs/Respondents,

-v-

MONTANA HIGH SCHOOL ASSOCIATION and
the BOARD OF CONTROL of the Montana
High School Association, and
BUTTE CENTRAL HIGH SCHOOL,

     Defendants/Appellants.

FILED

MAY 05 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
                 In and for the County of Silver Bow,
                 The Honorable James E. Purcell, Judge presiding.


COUNSEL OF RECORD:

     For Appellants:

          Jock O. Anderson, David C. Dalthorp, Gough,
          Shanahan, Johnson & Waterman, Helena, Montana

     For Respondents:

          David J. Wing, Butte, Montana


                 Submitted on Briefs:  March 10, 1994

                            Decided:  May 5, 1994

Filed:

                            Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from the Second Judicial District Court, Silver Bow County, granting a preliminary injunction against the defendants, the Montana High School Association (MHSA), the Board of Control of MHSA, and Butte Central High School (Butte Central), enjoining them from enforcing MHSA's maximum participation eligibility rules against the plaintiff. MHSA and the Board of Control appealed, asking this Court to dissolve the injunction. We reverse, remand and dissolve the injunction.

## ISSUES

This appeal involves two issues which relate to whether the District Court erred in applying the statutory rights and remedies of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et. seq., (IDEA), to enjoin MHSA from enforcing its eligibility rules against the plaintiff, J.M., Jr. The two issues are as follows:

1. Whether rights arising under IDEA afford protections to students who may be learning disabled but who do not have a written Individualized Education Program (IEP), and are not otherwise participating in a special education program prescribed under IDEA.

2. Whether the principles enunciated in T.H. v. Montana High School Ass'n. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB, apply to students who have exhausted their allotted eligibility under MHSA's rules.

## BACKGROUND

This case involves an eighteen year old Butte Central student

2

who claims learning disabilities, and who ran afoul of MHSA's maximum participation eligibility requirements. Under those rules, he was ineligible to play football or to wrestle during his senior year of high school. MHSA is a non-profit association incorporated under the laws of Montana. Membership in MHSA is voluntary, and is comprised of public and private high schools in Montana, including Butte Central. MHSA has the exclusive authority and responsibility for supervising and controlling all phases of interscholastic programs among its member schools. MHSA prohibits member schools from allowing any student to participate in interscholastic athletics if that student is ineligible to participate under MHSA rules and bylaws, and it has the power to sanction and penalize member schools which allow ineligible students to participate.

The two MHSA rules at issue in this case are called "maximum participation rules," in that they delineate the maximum semesters or seasons of eligibility for student participants in interscholastic contests.

The first rule prohibits students from participating in any MHSA regulated activity for more than eight semesters. The "eight semester" rule provides:

> No student shall be eligible to participate in an Association Contest who has been in attendance in any secondary school more than eight (8) semesters. An attendance of twenty (20) days during a semester shall constitute one semester's attendance under this section.
> . . .

Montana High School Ass'n. Official Handbook (1993-1994), By-Laws, Article II, Section (9), p. 19.

3

The second rule, or "four season" rule, provides:

No student shall be eligible to participate in an
Association Contest during more than four seasons in any
one sport. . . .

Montana High School Ass'n. Official Handbook (1993-1994), By-Laws,
Article II, Section (11), p. 20.

Inasmuch as students gain physical and mental maturity each season that they participate in sports and thereby gain the advantage of size, strength, and speed over younger students, MHSA established these maximum participation rules to promote safety, interscholastic competition, the opportunity to compete, and to insure that students do not delay graduation for athletic purposes.

The student involved in this case, J.M., Jr., had participated in four seasons of football prior to the 1993 fall season. J.M., Jr.'s high school football career began in 1989, when he played freshman football at Helena High School. In late October of 1989, J.M., Jr. and his family moved to Missoula. Because of educational difficulties, J.M., Jr. finished the remainder of the 1989-90 school year in the eighth grade. In the summer of 1990, J.M., Jr. moved with his family to Butte. He enrolled as a freshman in Butte Central, a private school, and played football for Butte Central for the 1990, 1991, 1992, seasons, thereby playing four seasons of football. Because J.M., Jr. had already participated in four seasons of football, he was ineligible to play football in the fall of 1993 at the commencement of his senior year, by reason of the MHSA four seasons rule. J.M., Jr. also wrestled for Butte Central, competing during the spring semesters of 1991, 1992 and it appears,

4

although not completely clear from the record, spring semester of 1993. Because of the eight semester rule, J.M., Jr. would have been ineligible to compete in spring semester wrestling during school year 1993-94.

In January 1993, in anticipation of J.M., Jr.'s potential ineligibility, his parents requested a formal ruling from MHSA regarding their son's eligibility to play football and to wrestle, for the 1993-94 school year. In February 1993, MHSA, through its executive director, Dan Freund, ruled that because the fall semester of 1993 would be J.M., Jr.'s fifth season of fall sports, and the spring semester would be his ninth semester of school, J.M., Jr. would be ineligible to participate in any interscholastic activities for the 1993-94 school year. J.M., Jr.'s parents appealed this decision to MHSA's Board of Control, the governing body responsible for the interpretation and enforcement of MHSA rules.

Subsequent to an eligibility hearing held in mid-April, 1993, the Board of Control denied J.M., Jr.'s request to waive the four season rule for the fall semester of the 1993-94 school year, but approved the request for a waiver of the eight semester rule for the spring semester. The Board of Control based its decision on the fact that J.M., Jr. had already competed in four seasons of fall sports, but had only competed in three seasons of spring sports.

The following chart illustrates J.M., Jr.'s participation in high school athletics and the expiration of his eligibility under

5

MHSA's four season and eight semester rules.

|  | Fall<br>Semester/Season | Spring<br>Semester/Season |
|---|---|---|
| 1989-1990 (9th/8th grade) | X | – |
| 1990-1991 (9th grade) | X | X |
| 1991-1992 (10th grade) | X | X |
| 1992-1993 (11th grade) | X | X |
| Total Semesters/Seasons of<br>eligibility before<br>1993-1994 school year | 4 | 3  =  7 |

J.M., Jr. was not found to be ineligible for any other reason, i.e., because of age limitations, or academic performance. He was denied eligibility solely because his eligibility had expired under the four season rule.

On September 3, 1993, J.M., Jr.'s parents filed a complaint in District Court alleging, primarily, that he had constitutional rights and statutory rights under IDEA which allowed him to participate in fall semester sports. On this same date, J.M., Jr.'s parents moved for, and were granted, a temporary restraining order, restraining MHSA and the Board of Control from enforcing its rules against J.M., Jr., thereby permitting him to participate in fifth season football during the pendency of the order.

The defendants moved to dissolve the temporary restraining order, and an evidentiary hearing was held on September 9, 1993. After considering the parties' testimony and other evidence, the District Court filed on September 20, 1993, its Amended Findings of Fact, Conclusions of Law and Order dated September 10, 1993, which preliminarily enjoined MHSA from enforcing its four seasons rule

6

against J.M., Jr., and from imposing sanctions against Butte Central, pending a further good faith, meaningful hearing by MHSA into the propriety of waiving the rule. The District Court also ordered MHSA to reconsider its action as it affects J.M., Jr., in wrestling, so as not to deny him permission to begin practice for wrestling during the fall semester. The complaint also raised other claims not at issue here.

The District Court based its order on the protections afforded by IDEA, and the holding set forth in T.H. v. Montana High School Ass'n. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB. Defendants appeal from the District Court's order and request that the preliminary injunction be dissolved.

### STANDARD OF REVIEW

Granting a preliminary injunction is within a trial court's discretion, and we will not interfere unless manifest abuse is shown. Frame v. Frame (1987), 227 Mont. 439, 444, 740 P.2d 655, 659. However, no discretion is involved when the court arrives at a conclusion of law, and we review the district court's conclusions of law to determine whether the district court's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. In the instant case, we conclude that the District Court's interpretation of the law was erroneous and that, accordingly, the preliminary injunction was improperly granted.

### DISCUSSION

The District Court found that J.M., Jr. had rights under IDEA.

7

This Act guarantees that all children with disabilities have available to them a free appropriate public education and related services to meet their unique needs. 20 U.S.C. § 1400(c).

IDEA provides federal funding for states which provide students with disabilities, special education services according to the Act. 20 U.S.C. §§ 1400(b)(9), 1412, 1413. The Act is implemented through both the "State education agency" and through "local education agencies," the public school system. 20 U.S.C. §§ 1401(a)(7)&(8), 1412(6), 34 C.F.R. § 300.2(b) (1992). The State and local education agencies are required to guarantee procedural safeguards for handicapped children, in providing a free and appropriate public education. 20 U.S.C. § 1415(a). Central among the safeguards is the development of a written IEP for each child. 20 U.S.C. § 1401(a)(20), 34 C.F.R. § 300.130(a), W.G. v. Board of Trustees of Target Range School D. (9th Cir. 1992), 960 F.2d 1479, 1483.

The IEP is a formal, written statement which delineates the disabled student's unique educational goals, objectives, curriculum, and related services. 20 U.S.C. § 1401(a)(20), 34 C.F.R. § 300.346 (1992).

IDEA and the Code of Federal Regulations specify the mechanism by which a person is determined to be learning-disabled and by which he or she qualifies for education-related benefits under IDEA. In summary, that process includes: (1) the identification of the student potentially in need of special education services; (2) the appointment of a Child Study Team (CST) which determines

8

whether the student qualifies for such services, 34 C.F.R. §§ 300.531, .532, .540 (1992); (3) the addition of the parents of the student to the CST, assuming the student is initially found to be qualified by the CST, 34 C.F.R. § 300.345 (1992); (4) the determination of the student's special needs and services which are necessary to provide the student with an appropriate education, 34 C.F.R. §§ 300.341 -.345 (1992); and, (5) the incorporation of the student's special needs and necessary services into a formalized, written IEP which controls the student's curriculum, 34 C.F.R. §§ 300.341, .346 (1992).

Importantly, IDEA's regulations require that a student receive special education related benefits only pursuant to an IEP. 34 C.F.R. §§ 300.340, .342(b)(1)(1992). Under the federal regulations implementing IDEA, "[a]n individualized education program must: (1) Be in effect before special education and related services are provided to a child." 34 C.F.R. § 300.342(b)(1)(1992). The requirement of a written IEP, insures that those students truly in need of special education receive services designed to meet their individual needs. 20 U.S.C. §§ 1401(a)(20), 1412(2)(c), 34 C.F.R. 300.340 - .349 (1992). It is clear, that a formal, written IEP developed pursuant to the Act is a critical component of IDEA. In fact, the Act requires that an IEP be in effect, before special education services are provided to a child. 34 C.F.R. §§ 300.340, .342 (1992).

In its decision, the District Court relied on T.H. v. Montana High School Ass'n. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB.

9

In that case, a 19 year old learning disabled high school student became ineligible to play sports during his senior year because of MHSA's "age rule," codified at Article II, § 8 of the MHSA By-Laws. That rule prohibits any student who becomes 19 years of age on or before midnight of August 31, of a given year, from participating in any interscholastic sports contest.

T.H. applied for a waiver of the age rule based upon his special needs as a learning disabled student. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 5. MHSA denied the waiver, and the student sought a preliminary injunction in Federal District Court. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 1, 6. The Federal District Court granted the preliminary injunction, holding that the student had a federally protected right under IDEA, as his IEP required that he participate in interscholastic sports as a motivational tool. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 9. The Federal District Court in T.H., found that the guarantee to a free and appropriate public education and related services for handicapped children, extends to interscholastic sports when such participation is included as a component of their IEP. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 9.

As the Federal Court observed in T.H., generally speaking, a student has no constitutional right to participate in interscholastic sports, it is a privilege which may be withdrawn by the school or by a voluntary association whose rules the school has agreed to follow. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-

10

JFB at 9. (Citations omitted.)

Furthermore, limitations on maximum eligibility for participation have been generally upheld. Smith v. Crim (Ga. 1977), 240 S.E.2d 884; Mitchell v. Louisiana High School Athletic Ass'n. (5th Cir. 1970), 430 F.2d 1155; California Interscholastic Federation v. Jones (Cal. App. 1988), 243 Cal. Rptr. 271; Alabama High School Athletic Ass'n. v. Medders (Ala. 1984), 456 S.2d 284; Murtaugh v. Nyquist (N.Y. Sup. 1974), 358 N.Y.S.2d 595; David v. Louisiana High School Athletic Ass'n. (La. App. 1971), 244 S.2d 292; Burtt v. Nassau County Athletic Ass'n. (N.Y. Sup. 1979), 421 N.Y.S.2d 172. In State ex rel. Bartmess v. Board of Trustees of School Dist. No. 1 (1986), 223 Mont. 269, 726 P.2d 801, we determined that academic eligibility standards as a condition of participation in extracurricular activities were lawful.

However, once interscholastic sports are offered, they acquire the protection from an unconstitutional deprivation. Bartmess, 726 P.2d at 804-805. In T.H. the Federal District Court concluded that "[w]hen participation in interscholastic sports is included as a component of an IEP as a 'related service', see 20 U.S.C. § 1401 (1), (17), the 'privilege' of competing in interscholastic sports is transformed into a federally protected right." T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 9.

The Federal District Court also ruled that "due process requires that the MHSA conduct an individualized inquiry to determine whether any of the four stated concerns underlying the age rule are implicated and violated by [the learning disabled

11

student's] participation in interscholastic sports, before it may deny a waiver of that rule." T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 10.

As a result of the decision in T.H., MHSA's Board of Control established a rule codifying the hearing process for addressing the concerns underlying the age rule. The rule provides that the student requesting the hearing prove that:

(1) the student does not create a safety risk to other players, and
(2) the student does not skew the overall competitiveness of the particular activity(ies) for which the student will participate, and
(3) the student's participation will not result in the exclusion of other eligible players, and
(4) the student meets all other criteria necessary for participation in MHSA activities, and
(5) the student has an IEP in compliance with OPI requirement standards, and
(6) the petition for a hearing must be initiated sufficiently in advance of the affected school year to allow the MHSA a reasonable opportunity to make an informed decision....

Montana High School Ass'n. Official Handbook (1993-1994), By-Laws, Article VII, Section (4), p. 30-31.

In the instant case, relying on T.H., the District Court found that, although J.M., Jr. did not have a formalized IEP, there was evidence indicating that there was an unwritten IEP in effect for J.M., Jr. at Butte Central which had been formulated by his teachers, principal, counselor, private doctor and parents. Therefore, the District Court concluded that J.M., Jr. had rights under IDEA. The District Court granted the preliminary injunction allowing J.M., Jr., to participate in a fifth season of football and, since the MHSA hearing process developed pursuant to T.H. had

12

not been available to J.M., Jr., the District Court also directed MHSA to hold an individualized inquiry into the propriety of waiving the maximum participation rules with respect to J.M., Jr.

At the outset, we note that T.H. involved a maximum participation rule based on age, unlike this case, where the maximum participation rules are based on the number of seasons played or number of semesters attended. However, since the basic rationale for maximum participation rules and the legal principles discussed are the same, we conclude that distinction is not material for purposes of this opinion.

Furthermore, whether J.M., Jr., is learning disabled and, therefore, eligible for special education benefits and services under IDEA, and if so, whether Butte Central, the Butte Public School District or the State, (the latter two entities not being parties to this litigation), are required to provide those special education benefits and services to him, is not before us and, we do not address those issues here.

Respondents argue that J.M., Jr. was entitled to have special education and related services provided to him at public expense pursuant to the provisions of IDEA, 20 U.S.C. § 1413(a)(4)(B)(i). They also claim that if they had sought involvement of the local education agency, a written IEP would have been developed. Assuming, arguendo, that their conclusions are correct, it remains that J.M., Jr.'s parents did not seek the involvement of the appropriate State or local education agencies; that the statutory and administrative mechanism for identifying J.M., Jr., as

13

learning-disabled and qualifying him for IDEA benefits and services was not implemented; and that a formal, written IEP requiring his participation in interscholastic sports was not adopted to govern J.M., Jr.'s curriculum. Although J.M., Jr., had a specialized educational program, he was not participating in a formal, written IEP established under the statutory and administrative mechanism mandated by IDEA and its implementing regulations.

That point is dispositive for purposes of the issues addressed in this opinion. The Federal District Court's grant of the preliminary injunction in T.H. and its requirement for a further individualized inquiry was premised on the fact that the disabled student in that case had been placed in a formal, written IEP tailored to meet his particular needs, in accordance with IDEA. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 4. One important and integral component of that IEP was a requirement that he participate in interscholastic sports. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 4. The combination of those two factors led the Federal District Court to conclude the "privilege" of competing in interscholastic sports was transformed into a federally protected right which could not be abrogated, absent a case-specific factual inquiry into T.H.'s waiver request and denial on a sufficient evidentiary basis. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 9-10.

That the Federal District Court was duly mindful of the potentially serious ramifications of its decision and the necessity for carefully following the mechanism for adopting and considering

14

the components of the formal IEP is evident in the Court's decision:

> As an aside, and as a final matter, the Court would strongly encourage the Fairview High School, and other schools developing IEPs under the IDEA, to exercise prudence when including as a component of an IEP any activity for which a student is ineligible because of the MHSA age rule or any other factor beyond the control of the school. By doing so, the school is potentially making a promise it simply cannot keep, and is setting students like T.H. up for disappointment and failure when and if valid restrictions on eligibility are ultimately enforced.

T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 13.

We conclude that the District Court's reliance on T.H., in the instant case was error. The student in T.H., had a written IEP developed according to the requirements of IDEA that required his participation in interscholastic sports as an integral component, whereas J.M., Jr. did not. It was improper for the District Court to elevate J.M., Jr.'s privilege of participating in interscholastic sports to the level of a federally protected right under IDEA and to afford him the individualized inquiry referenced in T.H., and codified in Article VII, Section (4) of MHSA Official Handbook's By-Laws, when J.M., Jr. had not followed the statutorily and administratively mandated mechanism for identifying and qualifying him under IDEA and for developing his formal, written IEP, assuming that he did qualify.

Moreover, whether his formal, written IEP would have mandated J.M., Jr's, participation in interscholastic sports as an integral component of the program, thereby elevating his privilege to participate to the status of a federally protected right with

15

concomitant individualized hearing rights, is simply academic unless and until J.M., Jr. first qualifies for IDEA benefits and services and until a formal IEP incorporating that requirement is, in fact, adopted. Here, J.M., Jr. seeks to avail himself of rights under a particular statutory scheme even before he has complied with the requirements of those very laws which, arguably, might bring those rights into existence. J.M., Jr., has put the cart before the horse.

Furthermore, MHSA is not a State or local education agency as defined under IDEA. T.H. (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB at 12-13. MHSA has no obligation under IDEA to identify or evaluate J.M., Jr.'s special education needs. Therefore, we are reluctant to impose upon MHSA the obligation to conduct an individualized hearing, with the potential for further litigation if the hearing decision is not to the liking of the respondents, absent J.M., Jr.'s request for waiver being premised on a federally protected right to participate in interscholastic sports contests under a formal, written IEP developed in accordance with IDEA mandates. Accordingly, we hold that it was improper for the District Court to grant the preliminary injunction and to require MHSA to conduct an individualized inquiry into the propriety of waiving its maximum participation rules when J.M., Jr. had not first established a federally protected right to participate in interscholastic sports in contravention of those rules.

The dissent contends that the issues presented on appeal are moot because the District Court's restraining order was only in

16

effect during the fall semester of the 1993-1994 school year, and it is now April, 1994. We disagree and conclude that although the time has lapsed on the District Court's preliminary injunction, the mootness doctrine does not bar our review. Aside from the fact that J.M., Jr., did not argue that we should not rule on the merits of this appeal because of mootness, we also note that given the amount of time inherent in the litigation process, and given our reluctance to entertain original proceedings and special writs except under extraordinary circumstances, it would be nearly impossible for any case such as this to ever reach this Court, via the usual litigation/appeal process, within the time during which the injunction was in effect.

To mechanically apply the doctrine of mootness under such circumstances would effectively deny the remedy of appeal. Where MHSA will, undoubtedly, be faced with future challenges to its maximum participation rules on issues and facts such as those presented here, it has a right to a final decision of this Court on the merits of its appeal.

For the foregoing reasons, we reverse the District Court's order dated September 10, 1993 and dissolve the preliminary injunction. To the extent that other issues remain to be resolved under respondent's complaint, we remand for further proceedings.

_____
Justice

We Concur:

_____
Chief Justice

17



_____
_____Justices_____

Justice William E. Hunt, Sr., did not participate in this action.

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

The District Court's preliminary injunction pertained only to athletic activities during the fall semester of the 1993-94 academic year. As I review the majority's proposed opinion, it is April 18, 1994.

The District Court's restraining order is no longer in effect. The issues raised on appeal are moot. The majority's opinion is merely advisory and has no direct bearing on the respective interests of the parties who are before the Court. Therefore, I would dismiss the appeal and not reach the merits in this case.

For these reasons, I dissent from the majority's decision to issue an opinion which has no effect on the rights of either party in this case.

_____
Justice

19