No. 96-024

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

M.H., J.R., individually and by
his parents, and next friends,
M.H. and T.H.,

Plaintiffs and Respondents,

v.

MONTANA HIGH SCHOOL ASSOCIATION and
the BOARD OF CONTROL of the Montana
High School Association, and
BUTTE HIGH SCHOOL,

Defendants and Appellants.

FILED

DEC 11 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
               In and for the County of Silver Bow,
               The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Jock O. Anderson, David C. Dalthorp; Gough,
                Shanahan, Johnson & Waterman, Helena, Montana

        For Respondents:

                David J. Wing; Hennessey, Joyce and Wing,
                Butte, Montana

                                Submitted on Briefs:  August 8, 1996

                                            Decided:  December 11, 1996

Filed:

_____
            Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The Montana High School Association (MHSA) appeals from the Findings of Fact, Conclusions of Law and Order of the Second Judicial District Court, Silver Bow County, enjoining it from enforcing the "age rule" against M.H., Jr. (M.H.). We reverse.

The issue on appeal is whether the District Court abused its discretion in granting a preliminary injunction against MHSA.

## Section 504/IDEA

Resolution of this appeal depends, in large part, on the proper interpretation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (§ 504), and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 through § 1491 (IDEA). Because of the importance of these federal statutes in understanding this case, we begin with a general overview of § 504 and IDEA.

Section 504 was enacted to address discrimination against disabled persons. It provides in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a). Section 504 is divided into different subsections which address subject matters ranging from education and employment to social services. See 34 C.F.R. § 104. The § 504 definition of disabled is broad and includes persons who have "physical or mental impairment which substantially limits one or

2

more major life activities." See 34 C.F.R. § 104.3(j). A student who meets all of the criteria of § 504 must be provided an opportunity to participate in extracurricular activities, such as interscholastic athletic competitions, which is equal to that of other students. 34 C.F.R. § 104.37(a)(1) and (c)(1).

IDEA originally was enacted to address the failure of state education systems to recognize and meet the educational needs of children with disabilities. 20 U.S.C. § 1400. IDEA is much narrower than § 504 with regard to the types of disabilities which are protected. *Compare* 20 U.S.C. § 1401(a) *with* 29 U.S.C. § 706(7)(B) and 34 C.F.R. § 104.3(j). For example, IDEA lists specific disabilities, such as mental retardation, blindness and deafness, which qualify a student for IDEA assistance. See 20 U.S.C. § 1401(a)(1)(i). Thus, all students who are qualified under IDEA also fall within the anti-discrimination protections of § 504; however, all § 504 students are not necessarily IDEA-qualified.

State and local education agencies are required to provide children who qualify as disabled under IDEA with free and appropriate public education which means, in part, special education and related services provided in conformity with an individualized education program (IEP). See 20 U.S.C. §§ 1400(c), 1415; 34 C.F.R. § 300.8(d). An IEP, as that term is used in IDEA, is a formal written statement developed for an IDEA-qualified disabled student; an IEP must specify the student's educational goals, objectives, curriculum and related services and be in effect

3

before special education is provided to the child. See 20 U.S.C. § 1401(a)(20); 34 C.F.R. §§ 300.340, 300.342, 300.346.

"Each public agency must provide special education and related services to a child with a disability in accordance with an IEP." 34 C.F.R. § 300.350. "Related services," as that term is used in IDEA, includes recreational activities where such activities are required to assist an IDEA-qualified disabled student in benefitting from special education. 20 U.S.C. § 1401(17). Thus, where an IEP contains a requirement for participation in extracurricular activities, for example, interscholastic sports, such participation is encompassed in the student's guaranteed right to free and appropriate public education. See 20 U.S.C. §§ 1400(c), 1401(17), (18) and (20); 34 C.F.R. §§ 300.1, 300.8, 300.16, 300.350.

*Facts*

MHSA is a nonprofit association incorporated under the laws of Montana. Membership in MHSA is voluntary and is comprised of various public and private high schools, including Butte High School. MHSA has the exclusive authority to supervise, control, regulate and administer interscholastic activities among member high schools. To that end, MHSA has enacted by-laws and rules governing member high schools, including rules addressing eligibility requirements for participating in interscholastic athletic competitions. MHSA has the power to sanction and penalize a member school which allows an ineligible student to participate in such competitions.

4

Two MHSA by-laws are at issue here. The first is a by-law commonly referred to as the "age rule." It provides, in pertinent part, that "[n]o student is eligible to participate in an Association contest [including interscholastic athletic competitions] who has become nineteen (19) years old on or before midnight, August 31, of a given year." Montana High Sch. Ass'n Official Handbook (1995-1996), By-Laws, Article II, Section (8), p. 19. The second is a by-law entitled "IDEA/SECTION 504 AGE RULE APPEALS" (IDEA/§ 504 appeals rule) which provides that a "special education" student may appeal an MHSA ineligibility decision made under the age rule. Under the IDEA/§ 504 appeals rule, the appealing student has the burden of proof with regard to six enumerated requirements. See Montana High Sch. Ass'n Official Handbook (1995-1996), By-Laws, Article VII, Subsection (B)(4), p. 31.

Here, M.H. repeated both kindergarten and the third grade due to difficulties in school. In November of 1985, during his second year in the third grade, M.H. was referred to special education and a Child Study Team (CST) determined that M.H. was "Learning Disabled" due to difficulties with reading and spelling. After completing his freshman year at Butte High School in 1993, M.H. was diagnosed with Attention Deficit Disorder (ADD).

During his freshman through junior years at Butte High School, M.H. competed in both wrestling and football. As a result of repeating kindergarten and the third grade, he turned nineteen prior to beginning his senior year. In May of 1995, just before

5

M.H. turned nineteen years of age, a CST determined that M.H. qualified as a § 504 student due to difficulties in English resulting from his ADD. M.H. did not qualify as a disabled student under IDEA.

Joseph Masolo (Masolo), a § 504 coordinator for the Butte public schools, made written recommendations regarding M.H. in a one-page letter. Specifically, Masolo recommended that M.H. continue to participate in wrestling to insure "academic success for the 1995-96 school [year]." Masolo later stated that his letter was an "IEP" developed pursuant to Montana guidelines for § 504 students. See Montana Office of Public Instruction, Section 504 Guidelines for Educators (1995) (OPI guidelines). Masolo correctly noted, however, that § 504, unlike IDEA, does not require the development of an IEP. He acknowledged that, while OPI guidelines recommend development of an "IEP" for § 504 students, such a § 504 "IEP" can be informal and even verbal. Moreover, Masolo recognized--and it is undisputed in this case--that the recommendations he developed for M.H. fall far short of the requirements for an IEP under IDEA.

On behalf of M.H., Daniel J. Peters (Peters), the principal of Butte High School, petitioned MHSA for waiver of the age rule to allow M.H. to participate in wresting and football during the 1995-1996 school year. MHSA held a telephone hearing on the petition, during which Peters explained that M.H.'s parents requested that the age rule be waived due to M.H.'s ADD. MHSA denied the request.

M.H. appealed MHSA's decision pursuant to the IDEA/§ 504 appeals rule. MHSA conducted a hearing and received evidence according to the procedure provided for such appeals. See Montana High Sch. Ass'n Official Handbook (1995-1996), By-Laws, Article VII, Subsection (B)(3), p. 30. Thereafter, it denied M.H.'s appeal on the basis that M.H. failed to prove, as required by Article VII, Subsection (B)(4), that: (1) he would not create a safety risk to other players; (2) he would not skew the overall competitiveness of the particular activities in which he would participate; and (3) his participation would not result in the exclusion of other eligible players.

M.H., individually and by his parents, filed a complaint and a motion for a preliminary injunction against MHSA in November of 1995, based primarily on IDEA. MHSA opposed M.H.'s motion for a preliminary injunction. It argued that M.H. had not been classified as a disabled student under IDEA, had not received any services under IDEA, had no IEP under IDEA and, therefore, was not entitled to the rights and protections afforded by IDEA.

The District Court held a hearing on M.H.'s motion for a preliminary injunction. M.H. indicated at the beginning of the hearing that he had spoken with MHSA about his intent to amend his complaint. Although M.H. did not file an amended complaint, he stated that he would be asserting a claim based on § 504 and Article VII, Subsection (B)(4) of the MHSA by-laws; he further indicated that he would be deleting the cause of action based on IDEA. MHSA stated that it had no objection to such an amendment of

7

the complaint. Accordingly, the record before us contains evidence and arguments primarily related to § 504.

The District Court concluded that M.H. had a federally protected right to participate in wrestling for the 1995-1996 school year and that MHSA's denial of M.H.'s application for a waiver of the age rule was arbitrary and capricious and denied M.H.'s due process rights. Thus, having implicitly concluded that M.H. likely would prevail on his underlying § 504 claim, the court further concluded that M.H. would suffer irreparable injury if MHSA enforced the age rule during the pendency of this case. Accordingly, the court granted M.H.'s motion for a preliminary injunction and enjoined MHSA from enforcing the age rule against M.H. MHSA appeals. Additional facts are set forth below where necessary.

## Discussion

Did the District Court abuse its discretion in granting a preliminary injunction against MHSA?

Section 27-19-201, MCA, which sets forth when a preliminary injunction may be granted, provides in relevant part:

An injunction order may be granted in the following cases:
(1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
(2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant[.]

An applicant for a preliminary injunction must either establish a prima facie case on the underlying claim or show that it is at

8

least doubtful whether he or she will suffer irreparable injury before an adjudication on the merits. Knudson v. McDunn (1995), 271 Mont. 61, 65, 894 P.2d 295, 298 (citing Porter v. K & S Partnership (1981), 192 Mont. 175, 181, 627 P.2d 836, 839).

Granting a preliminary injunction is within a district court's discretion, and we will not interfere unless a manifest abuse of discretion is shown. J.M., Jr. v. Montana High School Ass'n (1994), 265 Mont. 230, 235, 875 P.2d 1026, 1030 (citing Frame v. Frame (1987), 227 Mont. 439, 444, 740 P.2d 655, 659). Where, however, the granting of such an injunction is based on a conclusion of law, no discretion is involved and we review the district court's conclusion of law to determine whether the interpretation of the law is correct. J.M., 875 P.2d at 1030 (citation omitted).

## A. Applicability of T.H.

The District Court relied on T.H. v. Montana High Sch. Ass'n (D. Mont., Sept. 24, 1992), CV-92-150-BLG-JFB, in concluding that M.H. had a federally protected right, by virtue of the "IEP" prepared by Masolo, to participate in wrestling during the 1995-1996 school year. T.H. is distinguishable and, indeed, we distinguished T.H. in J.M. prior to the District Court's decision in the case presently before us. J.M. is dispositive here with regard to whether, absent an IEP pursuant to IDEA, a learning disabled student has a federally protected right to participate in interscholastic sports.

9

J.M. involved a Butte Central High School student who repeated the eighth grade due to difficulties in school. As a result, J.M. became ineligible to participate in football and wrestling during his senior year due to MHSA's maximum participation eligibility requirements. J.M., 875 P.2d at 1028. Two MHSA rules were at issue: the first provided that a student who has attended a secondary school more than eight semesters was ineligible to participate in an Association Contest (eight semester rule); the second provided that "[n]o student shall be eligible to participate in an Association Contest during more than four seasons in any one sport" (four seasons rule). J.M., 875 P.2d at 1028.

MHSA determined that J.M. was ineligible to participate in wrestling and football for the 1993-1994 school year and J.M. appealed. MHSA held an eligibility hearing and subsequently denied J.M.'s request to waive the four season rule for the fall semester, but approved his request for a waiver of the eight semester rule for the spring semester. The basis for MHSA's decision was that J.M. already had competed in four seasons of fall sports, such as football, but had only competed in three seasons of spring sports. J.M., 875 P.2d at 1029.

J.M. sued MHSA, arguing that he had constitutional and statutory rights under IDEA to participate in fall semester sports. The district court issued a temporary restraining order against MHSA and, as a result, J.M. was permitted to participate in football during the pendency of his case. Thereafter, MHSA moved to dissolve the restraining order and an evidentiary hearing was

held.   The district court preliminarily enjoined MHSA from enforcing its four seasons rule against J.M. and from imposing sanctions against Butte Central.   Its order was based on IDEA and T.H.   J.M., 875 P.2d at 1029.

We discussed T.H. at length in J.M.   See J.M., 875 P.2d at 1030-32.   T.H. involved a nineteen year old high school student who had an IEP pursuant to IDEA and who became ineligible to participate in interscholastic sports due to MHSA's age rule. J.M., 875 P.2d at 1030-31.   T.H.'s IEP expressly required continued participation in interscholastic sports as a motivational tool. J.M., 875 P.2d at 1031.   T.H. sued in federal district court to enforce his rights under IDEA.

The federal district court recognized that, ordinarily, students do not have a constitutional right to participate in interscholastic sports; rather, it is a privilege which may be withdrawn.   J.M., 875 P.2d at 1031.   It determined, however, that an IDEA-qualified student's guaranteed right to a free and appropriate public education and related services includes participation in interscholastic sports where such participation is included as a component of the student's IEP.   J.M., 875 P.2d at 1031.   On that basis, the court concluded that T.H.'s privilege to participate in interscholastic sports had been transformed into a federally protected right by virtue of his IEP under IDEA and, further, that MHSA denied T.H. due process of law in failing to conduct an appropriate inquiry before depriving T.H. of that right. J.M., 875 P.2d at 1031.   Accordingly, the court preliminarily

11

enjoined MHSA from enforcing its age rule against T.H. until an appropriate inquiry could be conducted. J.M., 875 P.2d at 1031. MHSA enacted the IDEA/§ 504 appeals rule and the hearing standards therein in response to T.H. See J.M., 875 P.2d at 1031.

We distinguished T.H. from the situation before us in J.M. Unlike T.H., the student in J.M.

> had a specialized educational program, [but] he was not participating in a formal, written IEP established under the statutory and administrative mechanism mandated by IDEA and its implementing regulations.

J.M., 875 P.2d at 1032. Thus, the dispositive elements on which the T.H. court based its conclusion that a federally protected right existed--namely, that the student had a formal, written IEP under IDEA which required his participation in interscholastic sports--were not present in J.M. J.M., 875 P.2d at 1033. We held, therefore, that the district court improperly elevated J.M.'s privilege of participating in interscholastic sports to a federally protected right under IDEA. J.M., 875 P.2d at 1033.

T.H.'s federally protected right to participate in interscholastic sports derived solely from the express requirements of his IDEA IEP. J.M. and the present case share the same dispositive fact which distinguish them from T.H.: in each case, the student did not have an IEP developed pursuant to IDEA which required his participation in interscholastic sports. Consequently, J.M. controls and renders erroneous the elevation of a privilege into a federally protected right, pursuant to an IDEA IEP, in this case. As was the case in J.M., the District Court's reliance on T.H. under these facts was misplaced.

12

## B. *Section 504*

The District Court recognized that a "distinguishing feature" of this case, when compared to T.H., is that M.H.'s "IEP" was pursuant to § 504 while T.H.'s was pursuant to IDEA. Based on its review of the OPI § 504 guidelines and a federal regulation, however, the court concluded that "this is a distinction without a difference." We disagree.

The OPI guidelines provide guidance and set forth recommendations for educators in dealing with § 504 students. The appendix to the OPI guidelines includes the text of 34 C.F.R. § 104.33(b), which defines what constitutes an "appropriate education" under § 504 and provides, in relevant part:

> (1) For the purpose of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met. . . .
> (2) Implementation of an [IEP] developed in accordance with [IDEA] is one means of meeting the standard established in paragraph (b)(1)(i) of this section.

As is clear from its express language, 34 C.F.R. § 104.33(b)(2) does not require the development of an IEP for § 504 students. Moreover, neither the foregoing regulation nor the OPI guidelines renders a student's rights under § 504 and IDEA equivalent. Indeed, they are incapable of doing so because the differences between a student's rights under § 504 and a student's rights under IDEA are statutory. We conclude, therefore, that the OPI guidelines and federal regulation relied on by the District Court do not support its determination that the differences between

13

M.H.'s one-page letter "IEP" under § 504 and T.H.'s IDEA IEP is "a distinction without a difference."

Moreover, recent cases from the United States Circuit Courts of Appeals clarify that § 504 is an anti-discrimination statute which does not confer any special rights on disabled persons beyond the right to be free from discrimination based solely on disability. Pottgen v. Missouri State High Sch. Activities Ass'n (8th Cir. 1994), 40 F.3d 926, involved a Missouri high school student who had repeated two grades in elementary school due to a learning disability and turned nineteen before beginning his senior year of high school. Like MHSA, the Missouri State High School Activities Association (MSHSAA) has an age rule which prohibits a student who turns nineteen prior to a certain date from participating in interscholastic sports. As a result, Pottgen was ineligible to play baseball during his senior year of high school. Pottgen, 40 F.3d at 927-28.

Pottgen petitioned the MSHSAA for a "hardship" waiver since he was held back in school due to learning disabilities. MSHSAA denied his petition and Pottgen sued in federal court based, in part, on § 504. Pottgen, 40 F.3d at 928. The district court granted a preliminary injunction enjoining MSHSAA from enforcing its age rule. Pottgen, 40 F.3d at 928.

In addressing MSHSAA's appeal, the Eighth Circuit recognized that § 504 prohibits discrimination against an "otherwise qualified individual" on the basis of his or her disability and set forth a two-part test for determining whether a student is an "otherwise

14

qualified individual." A court must determine both whether the individual meets all of the essential eligibility requirements and whether reasonable modifications exist. Pottgen, 40 F.3d at 929.

The Eighth Circuit concluded that MSHSAA had demonstrated that the age rule is an essential eligibility requirement because

> [a]n age limit helps reduce the competitive advantage flowing to teams using older athletes; protects younger athletes from harm; discourages student athletes from delaying their education to gain athletic maturity; and prevents over-zealous coaches from engaging in repeated red-shirting to gain a competitive advantage. These purposes are of immense importance in any interscholastic sports program.

Pottgen, 40 F.3d at 929. However, even though Pottgen could not meet this essential eligibility requirement, he would still be an "otherwise qualified individual" for § 504 anti-discrimination purposes if reasonable accommodations would enable him to meet the age limit. Pottgen, 40 F.3d at 929 (citations omitted).

The Eighth Circuit noted that, since Pottgen already had exceeded MSHSAA's age limit, the only possible accommodation would be to waive the age rule. It rejected Pottgen's contention that a waiver would be a reasonable accommodation, however, concluding that the waiver of an essential eligibility standard would constitute a fundamental alteration in the nature of the baseball program and that accommodations which require such a fundamental alteration are not reasonable. Pottgen, 40 F.3d at 930. Observing that "[s]ection 504 was designed only to extend protection to those potentially able to meet the essential eligibility requirements of a program or activity," the Eighth Circuit held that Pottgen was

15

not an "otherwise qualified individual." Pottgen, 40 F.3d at 930 (citation omitted).

In Sandison v. Michigan High Sch. Athletic Ass'n (6th Cir. 1995), 64 F.3d 1026, the Sixth Circuit followed the Pottgen analysis of § 504's "otherwise qualified individual" language in a similar age rule case. See Sandison, 64 F.3d at 1034-35. Sandison involved two Michigan high school students who were held back in school due to learning disabilities and became nineteen prior to beginning their senior year in high school. Under the Michigan High School Athletic Association (MHSAA) age rule, students who become nineteen prior to a certain date are prohibited from participating in interscholastic sports. Sandison, 64 F.3d at 1028.

The students sued MHSAA in federal district court, based on § 504, and the court held that the students were "otherwise qualified" and discriminated against based on their disabilities. The federal district court preliminarily enjoined MHSAA from enforcing its age rule against the students. Sandison, 64 F.3d at 1029.

The Sixth Circuit relied on Pottgen and concluded, on the record before it, that the age rule is a necessary requirement of interscholastic sports programs and that waiver of the rule fundamentally alters such programs. Sandison, 64 F.3d at 1035. The court observed that a "significant peculiarity" exists in attempting to characterize waiver of the age rule as a "reasonable

16

accommodation" of a student's learning disabilities.  <u>Sandison</u>, 64 F.3d at 1035.

> Ordinarily, an accommodation of an individual's disability operates so that the *disability* is overcome and the disability no longer prevents the individual from participating.  In this case, although playing high school sports undoubtedly helped the [students] progress through high school, the *waiver* of the age restriction is not directed at helping them overcome learning disabilities; the waiver merely removes the age ceiling as an obstacle.

<u>Sandison</u>, 64 F.3d at 1035.

The Sixth Circuit also considered the "solely by reason of . . . disability" language of § 504 in the context of MHSAA's age rule.  <u>Sandison</u>, 64 F.3d at 1031-33.  It noted that the age rule did not preclude the students from participating in interscholastic sports until they turned nineteen and, therefore, the rule was neutral with respect to disability.  <u>Sandison</u>, 64 F.3d at 1032. Accordingly, the Sixth Circuit concluded that the age rule does not exclude students "solely by reason of" their disabilities; rather, it excludes students "'solely by reason of' age, not disability." <u>Sandison</u>, 64 F.3d at 1035.

Both <u>Pottgen</u> and <u>Sandison</u> involved appeals from preliminary injunctions enjoining enforcement of age eligibility requirements for interscholastic sports.  In both cases, the Circuit Courts of Appeals held that the preliminary injunctions were improperly granted because the students had virtually no likelihood of success on the merits of their § 504 claims.  <u>See</u> <u>Pottgen</u>, 40 F.3d at 930-31; <u>Sandison</u>, 64 F.3d at 1035.

17

In the present case, the District Court implicitly concluded that M.H. likely would prevail on his underlying § 504 claim. The court then specifically granted the preliminary injunction on the basis that M.H. would suffer irreparable injury if it did not enjoin MHSA from enforcing its age rule.

The two statutory bases for granting a preliminary injunction at issue here--namely, the "likelihood of success on merits" basis and the "irreparable injury" basis as set forth in §§ 27-19-201(1) and (2), MCA, respectively--are not unrelated. "Injury" is defined as "[a]ny wrong or damage done to another, either in his person, rights, reputation, or property." BLACK'S LAW DICTIONARY, 924 (1968). Thus, the irreparable injury basis for granting preliminary injunctions is based on an implicit determination that the applicant is likely to succeed on his or her underlying claim and, as a result, would suffer a "wrong or damage done to . . . his person, rights, reputation, or property" if some act were committed or allowed to continue during the litigation.

Similarly, we previously have indicated that a likelihood of success on the merits is not always sufficient, in and of itself, to warrant injunctive relief. See Porter, 627 P.2d at 840. There must also be a showing that, absent a preliminary injunction, the applicant would suffer harm which could not be adequately remedied after a trial on the merits and, therefore, a preliminary injunction is necessary to maintain the status quo and minimize harm to the parties. See Porter, 627 P.2d at 839-40. In other words, the applicant also must make a showing of irreparable harm.

18

In the present case, the District Court's conclusion that M.H. would suffer irreparable injury presupposes that enforcement of MHSA's age rule would constitute a wrong or damage to M.H.'s right to participate in interscholastic sports. As is clear from J.M. and our discussion above, however, participation in interscholastic sports is a privilege, not a right, except in extremely limited circumstances not present here. See J.M., 875 P.2d at 1031-32. Thus, the District Court's implicit conclusion that M.H. would likely succeed on the merits of his underlying § 504 claim was erroneous.

We previously have indicated that an applicant for a preliminary injunction need not make a case that would entitle him or her to relief at a trial on the merits; an applicant must prove only a probable right and a probable danger that such right will be denied absent injunctive relief. See Porter, 627 P.2d at 840; Boyer v. Karagacin (1978), 178 Mont. 26, 33, 582 P.2d 1173, 1177. Indeed, we consistently have held that district courts cannot issue preliminary injunctions absent the applicant establishing a prima facie case on the underlying claim or, based on the showing made, that it is at least doubtful whether or not the applicant will suffer irreparable injury before adjudication of his or her rights. See, e.g., Porter, 627 P.2d at 839; Boyer, 582 P.2d at 1177-78.

Here, the District Court concluded that M.H. would suffer irreparable injury based on its erroneous conclusion that M.H. had a federally protected right to participate in interscholastic sports. We hold that the District Court erred in concluding that

19

M.H. would suffer irreparable injury and, therefore, that the court manifestly abused its discretion in granting a preliminary injunction against enforcement of MHSA's age rule. We reverse, dissolve the injunction and remand for such further proceedings as may be appropriate, consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

I agree with the District Court's conclusion that whether M.H.'s independent education program was implemented pursuant to § 504 of the Rehabilitation Act of 1973, or the Individuals With Disabilities Education Act is a distinction without a difference.

Although not necessary to the implementation of § 504 services, an independent education program is one alternative method of complying with the requirements of § 504 of the Rehabilitation Act. The following federal regulations illustrate the significance of an independent education program (IEP) in the context of § 504.

34 C.F.R. § 104.1 provides that:

> The purpose of this part is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance.

34 C.F.R. § 104.33(a) provides that:

> A recipient that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

34 C.F.R. § 104.33(b) gives the following explanation of what is included in an "appropriate public education":

> (1) For the purpose of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon

21

adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.

Although an individualized education program is not necessary to satisfy the § 504 requirement for "appropriate public education," it is one acceptable method of complying with that requirement. 34 C.F.R. § 104.33(b)(2) provides:

> Implementation of an individualized education program developed in accordance with the Education of the Handicapped Act is one means of meeting the standard established in paragraph (b)(1)(i) of this section.

In other words, when an individualized education program is developed for § 504 students to satisfy the requirement that an appropriate public education is being provided by designing services necessary to meet an individuals educational needs, that IEP is developed to satisfy the secondary education program's federal obligation to that student. Therefore, an IEP developed pursuant to these regulations is no less a federally-protected right than an IEP developed pursuant to 20 U.S.C. § 1401(18) of the IDEA. Logically, when participation in interscholastic sports is included as a component of an IEP developed for § 504 students, it is also a federally-protected right.

The Montana High School Association (MHSA) was a party to *T.H. v. Montana High School Association* (D. Mont. Sept. 24, 1992), CV 92-150-BLG-JFB. It did not appeal from the Federal District Court's adverse decision in that case, and is therefore collaterally estopped from denying its applicability based on subsequent decisions by federal courts of appeal in other circuits.

22

In the relevant part of the *T.H.* decision, Federal District

Court Judge Battin held that:

> 20 U.S.C. § 1400(c) guarantees T.H. the right to a free and appropriate public education, "provided in conformity with [an] individualized education program . . . ." 20 U.S.C. § 1401(18); 34 C.F.R. § 300.4. When participation in interscholastic sports is included as a component of an IEP as a "related service," see 20 U.S.C. § 1401(1), (17), the "privilege" of competing in interscholastic sports is transformed into a federally protected right.
>
> 8. Because T.H. has a federally protected right, and not a mere privilege, to participate in interscholastic sports, due process required that the MHSA conduct meaningful, individualized inquiry into T.H.'s request for a waiver from the age rule. . . . By failing to conduct a case-specific factual inquiry into T.H.'s request for a waiver, and by denying a waiver without a sufficient evidentiary basis for that decision, the MHSA has made a mockery of the waiver provisions.
>
> . . . .
>
> 10. In this context, due process requires that the MHSA conduct an individualized inquiry to determine whether any of the four stated concerns underlying the age rule are implicated and violated by T.H.'s participation in interscholastic sports, before it may deny waiver of that rule. The mere fact that T.H. is over the stated age limit justifies initial application of the rule, but does not justify a refusal to waive the rule, where a federally protected right to participate is concerned.
>
> 11. . . . .
>
> First, the MHSA must conduct a hearing and determine whether T.H.'s participation in interscholastic sports actually creates a safety risk to other players. . . .
>
> Next, the MHSA must determine whether T.H.'s participation would skew the overall competitiveness of the particular interscholastic sports events. . . .
>
> Likewise, the MHSA must specifically determine whether Plaintiff's participation would result in the exclusion of other eligible players, and other facts relevant to intra-team competition.

23

*T.H.*, CV 92-150-BLG-JFB, slip op. at 9-12 (footnote omitted).

It is clear from the District Court's findings of fact in this case that MHSA did not conduct the kind of hearing, nor make the kind of findings which would enable M.H., his family, or the District Court to understand the impact of his participation on the safety of other students, whether his participation would skew competitiveness in his events, or the effect of his participation on other athletes. Absolutely no findings were made in this regard by the MHSA. Instead, it simply shifted the burden to M.H. to prove that these consequences would not occur, and concluded he had not done so. More is required to dispense with the rights provided by federal law.

The MHSA has not contended on appeal that the District Court's findings of fact were clearly erroneous. Therefore, based on the law which is applicable to this case, the following findings by the District Court are dispositive:

> 7. . . . It was determined by the Child Study Team that M. H. Jr. should receive Section 504 services, because of the discrepancy between the ability of M. H. Jr. to perform well in math and his actual achievements in math. It was further determined that M. H. Jr.'s "I.E.P. will be written by Mr. Masolo (504)". An I.E.P. is an Individualized Education Program and Section 504 refers to Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. Section 794.
>
> . . . .
>
> 9. . . . The Child Study Team determined that "[M.H.] does much better in his school work when he is involved in wrestling. The Child Study Team strongly recommended that [M.H.] participate in wrestling for the 1995-96 school year." Accordingly, Mr. Masolo, acting pursuant to the directions of the Child Study Team, set

24

forth the following accommodation in writing for M. H. Jr.:

**ACCOMMODATION**

1. The 504 coordinator will monitor [M.H.] in his math class on a monthly basis.

2. [M.H.] should be involved in wrestling to insure even great academic success for the 1995-96 school [year].

10. The above special education program has been in place for M. H. Jr. since he began his senior year at Butte High School for the 1995-96 school year. . . .

. . . .

23. The record before this Court does not convince it that the MHSA conducted such an individualized, factual inquiry. The only official form that was adopted by the MHSA seeking facts related to the above three concerns was a form that was to be used when an appeal of the age rule was requested. This form was Plaintiffs' Exhibit 2B and it asks only for limited general information. No other directions are given to the student seeking the waiver or the student's representative as to the information that should be provided to the MHSA.

24. The minutes of the first meeting that was held with regard to the appeal (Pl's Exh. 6) set forth no facts relating to the three concerns underlying the age rule, other than reciting that a poll of the schools against whom M. H. Jr. might be competing in football and in wrestling revealed that seven schools opposed his participation in football and seven schools were in favor of it. With regard to wrestling, twenty-two schools did not object to him participating in wrestling, and eleven schools did object.

25. The minutes of the second hearing where the request for the waiver from the age rule was discussed (see Defendants' Exhibit A) are even briefer, stating only that the motion was denied after much discussion. There is nothing before the Court that would indicate what, if any, pertinent facts were discussed.

25

26. The letter from Dan L. Freund (Pl's Exh. 9) stating that the appeal was denied also sets forth no facts upon which the board's decision could be based.

27. In view of the extremely sparse documentary record relating to the deliberations of the MHSA, the Court finds that the testimony of Leo Wohler and Dan Freund was not credible.

The majority opinion constructs a substantive difference, where none exists, between those rights created by the Individuals with Disabilities Education Act and the Federal Rehabilitation Act of 1973. In the process, the majority arbitrarily denies procedural safeguards to one class of handicapped students, while implicitly recognizing the need for procedural safeguards for a different class of handicapped students. Whether analyzed in terms of the law, or common sense, that distinction is indefensible.

The District Court's decision was comprehensive, well reasoned, and fully supported by the record in this case. I would affirm the District Court's judgment, and for the reasons given, dissent from the majority opinion.

_____
Justice

Chief Justice J. A. Turnage and Justice William E. Hunt, Sr., join in the foregoing dissenting opinion.

_____
Justice

_____
Justice

26

December 11, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Jock O. Anderson, Esq.
Gough, Shanahan, Johnson & Waterman
Box 1715
Helena MT 59624-1715

David J. Wing
Hennessey, Joyce and Wing
Box H, 35 West Granite
Butte MT 59703

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy