MR. JUSTICE WEBER
delivered the Opinion of the Court.
This is an appeal of a summary judgment of the District Court for Lewis and Clark County which upheld the requirement that Helena high school students participating in extracurricular activities maintain a 2.0 grade average. We affirm.
*271 Relators appeal and raise the following issue: Did the District Court err as a matter of law in holding that under the United States and Montana Constitutions participation in existing extracurricular activities is not a fundamental right?
Relators are citizens and taxpayers of Lewis and Clark County and parents of students enrolled in the two Helena high schools. They object to the rule adopted by respondents requiring a student to maintain a 2.0, or “C”, grade average for the preceding nine weeks in order to participate in extracurricular activities in the following nine week grading period. Extracurricular activities are those which do not earn credit toward graduation, including athletics, band, choir, speech, drama, cheerleading, drill team, student council, and holding class office. The 2.0 rule does not apply to special education students or students with learning disabilities.
The Helena high schools are members of the Montana High School Association (MHSA). The MHSA requires a 1.0, or “D”, grade average for participation in extracurricular activities. Its regulations permit member schools to adopt more stringent policies. The National Collegiate Athletic Association (NCAA) requires a minimum grade point average of 2.0 to participate at the college level in practice, regular season competition and athletically related financial aid during the first academic year.
Respondents adopted the 2.0 rule as an incentive for students who desire to participate in extracurricular activities. The 2.0 rule is a higher standard than that needed for graduation from Helena high schools, which is a 1.0 grade average in required courses. Respondents admit the 2.0 policy is not based on any scientific or statistical studies showing academic improvement by students following the adoption of such a policy.
Relators brought an action in District Court requesting injunctive relief and a declaratory judgment that the 2.0 rule was unconstitutional. The complaint alleged violation of the equal protection and equal educational opportunity clauses of the Montana Constitution. Following briefing and summary judgment motions by both parties, the District Court ruled in favor of respondents. The District Court found the 2.0 rule to be “a reasonable, fair, equitable and non-discriminatory policy, promulgated for the purpose of implementing the constitutional and statutory mandated educational goals of the school district. In its application, the requirement does not violate any constitutionally protected rights of these Relators, State or Federal ...”
*272 Amicus briefs were filed by several parties, some of whom addressed wider issues than the one now before us. We are not ruling upon the issue of whether or not the right to education itself is a fundamental right. We are not ruling upon whether the failure to offer any extracurricular activities may result in a constitutional deprivation, nor whether extracurricular activities are in any way an indispensable component of the basic system of free quality public education. We are not in any way considering or ruling upon the question of funding education in Montana, including the funding of extracurricular activities, and are not considering any of the contentions being made that equal educational opportunity may require some specific types of funding. None of these issues is before us.
The issue appealed concerns the standard of review under which the 2.0 rule will be considered. Equal protection analysis traditionally involves one of two standards. A state action which burdens a fundamental right is subject to strict scrutiny and must be based upon a compelling state interest. An action which infringes upon a right which is not fundamental must only be rationally related to a legitimate government objective. A third middle-tier level of constitutional analysis has been recently recognized in Montana. See Butte Community Union v. Lewis (Mont. 1986), [219 Mont. 426,] 712 P.2d 1309, 43 St.Rep. 65.
The relators contend that the right to participate in extracurricular activities is fundamental and that the strict scrutiny standard therefore applies. The United States Supreme Court has held that education is not a fundamental right guaranteed by the federal Constitution. San Antonio School District v. Rodriguez (1973), 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. Based on that holding, we conclude that participation in extracurricular activities is not a fundamental right under the U.S. Constitution. However, that does not preclude a finding that the right is fundamental under Montana's Constitution.
The relators cite Moran v. School District #7, Yellowstone County (D.Mont. 1972), 350 F.Supp. 1180. In that case, Federal District Judge Murray said this Court had recognized extracurricular activities as an “integral part of the total educational process.” The court there overturned a school rule which denied a married high school student the right to participate in extracurricular activities. Since that case involved the right to marriage, there was a separate ground for heightened constitutional scrutiny. While we agree that extracur *273 ricular activities are part of the educational process, the case is not authority because of the marriage aspect.
The Moran decision was based on language in a case which relators also cited, McNair v. School Dist. No. 1 (1930), 87 Mont. 423, 428, 288 P. 188, 190:
“Under the heading ‘Education,’ our Constitution declares that ‘it shall be the duty of the legislative assembly of Montana to establish and maintain a general, uniform and thorough system of public, free, common schools.’ . . . [I]t is clear that the solemn mandate of the Constitution is not discharged by the mere training of the mind; mentality without physical well-being does not make for good citizenship — the good citizen, the man or woman who is of the greatest value to the state, is the one whose every faculty is developed and alert.”
That case arose out of a taxpayer’s objection to the construction of a gymnasium and athletic field. This Court held the school board had been granted the authority to provide such facilities. The ‘solemn mandate of the Constitution’ discussed in McNair has been reworded in our 1972 Constitution, Article X, Section 1(3): “The legislature shall provide a basic system of free quality public elementary and secondary schools.” The emphasis in McNair was that education should attempt to improve mental, physical, and moral powers.
This Court recently recognized that not all constitutionally important rights are fundamental rights. The holding in Butte Community Union was that a right to welfare, which is lodged in our State Constitution, “is an interest whose abridgment requires something more than a rational relationship to a governmental objective.” However, we concluded that the right to welfare was not a fundamental right, and stated:
“In order to be fundamental, a right must be found within Montana’s Declaration of Rights or be a right ‘without which other constitutionally guaranteed rights would have little meaning.’ In the Matter of C.H. (Mont. 1984), [210 Mont. 184,] 683 P.2d 931, 940, 41 St.Rep. 997, 1007.”
Butte Community Union, 712 P.2d at 1311. The right to welfare was not found within Montana’s Declaration of Rights nor did we conclude it was a right without which other constitutionally guaranteed rights would have little meaning.
Participation in extracurricular educational activities is not found within Montana’s Declaration of Rights. The second portion of the test, whether the right is one without which other constitutionally *274 guaranteed rights would have little meaning, is more difficult and we conclude, is best addressed by an analysis of Montana’s constitutional provisions as to education.
The McNair case demonstrates that physical and moral development are important aspects of education. The state has an important interest in seeing that its young citizens receive a basic quality education under Article X, Section 1, Mont. Const. (1972): “It is the goal of the people to establish a system of education which will develop the full educational potential of each person.” The provisions of Article X demonstrate that there are constitutional rights and obligations which extend to all sides of the question of education. There is the right to equality of educational opportunity guaranteed to each person. There is the goal to establish a system of education which will develop the full educational potential of each person. There is a requirement that the State’s educational goals recognize and preserve the cultural heritage of American Indians. The legislature is obligated to provide a basic system of free quality education. The state board of education is responsible for long-range planning, coordination and evaluation of the systems with regard to such rights and obligations. The school trustees are vested with the authority to discharge these obligations and protect the rights.
Our review of the educational provisions of the Montana Constitution demonstrates the extreme importance attached to the various elements of education by the people of Montana in adopting the Constitution. This review suggests that the various aspects of education under our Montana Constitution could be classed as “fundamental” because of the critical importance of developing the full educational potential of each citizen. However, we are required to analyze the educational aspect of extracurricular activities from an equal protection standpoint. Gerald Gunther, in his law review article entitled The Supreme Court 1971 Term — Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972), points out that where a statute impinges on a right which is classed as fundamental, strict scrutiny of that statute is required and the result is invariably fatal to the statute. Justice Marshall commented on the fatal nature of strict scrutiny analysis in his dissenting opinion in Massachusetts Bd. of Retirement v. Murgia (1976), 427 U.S. 307, 318, 96 S.Ct. 2562, 2569, 49 L.Ed.2d 520, 528:
“Although the Court outwardly adheres to the two-tier model, it has apparently lost interest in recognizing further ‘fundamental’ *275 rights and ‘suspect’ classes. . . In my view, this result is the natural consequence of the limitations of the Court’s traditional equal protection analysis. If a statute invades a “fundamental” right or discriminates against a “suspect” class, it is subject to strict scrutiny. If a statute is subject to strict scrutiny, the statute always, or nearly always ... is struck down. Quite obviously, the only critical decision is whether strict scrutiny should be invoked at all. It should be no surprise, then, that the Court is hesitant to expand the number of categories of rights and classes subject to strict scrutiny, when each expansion involves the invalidation of virtually every classification bearing upon a newly covered category.”
In a similar manner, we pointed out that the strict scrutiny test requires the State to show a compelling state interest and is seldom satisfied. Butte Community Union, 712 P.2d at 1312.
Our analysis of the educational provisions of our Montana Constitution demonstrates there are competing and in some cases contradictory viewpoints which must be considered in determining whether the educational aspects of extracurricular activities are a right under our Constitution. We conclude that the only standard of constitutional review which allows a careful balancing of these competing interests is middle-tier analysis. We therefore hold that the middle-tier constitutional analysis is to be applied in determining whether the 2.0 rule violates students’ right to participate in existing extracurricular activities. We further hold that this right is not a fundamental right under the Montana Constitution; but that such right is clearly subject to constitutional protection and that a middle-tier analysis is to be applied for constitutional equal protection purposes.
The standard of review used under Montana’s middle-tier constitutional analysis is a “balancing of the rights infringed and the governmental interest to be served by such infringement.” Butte Community Union, 712 P.2d at 1314. As in Butte Community Union, our first inquiry is whether the classification is reasonable. Specifically, is the classification of students eligible to participate in extracurricular activities on the basis of a 2.0 rule reasonable? Then we must examine whether the government interest in making this classification based upon academic grades is more important than the students’ interest in participating in existing extracurricular activities. In other words, the school district must demonstrate that its classification is substantially related to an important governmental objective.
*276 The action of the trustees places attaining minimum grades in academic subjects above participating in non-academic or extracurricular activities for which no graduation credits are given. The 2.0 rule does not apply to special education students or students with learning disabilities. While it is not based on studies showing improved grades for students operating under such a rule, it cannot be denied that the rule is an incentive for those students who wish to participate in extracurricular activities. It also promotes adequate time to study for those students who have not maintained a 2.0 grade average. We conclude that the classification is a reasonable one.
The priority given to academic over non-academic work to the extent found here does not contradict this Court’s statement in McNair that physical and moral education are also important. We are not able to conclude, as the relators urge, that an opportunity to participate in extracurricular activities is more important than the achievement of average academic performance. We conclude that the government interests in developing the full educational potential of each person and providing a basic system of quality public education by the enactment of the 2.0 rule outweigh the students’ interest in participating in existing extracurricular activities.
We hold that the District Court did not err in holding that participation in existing extracurricular activities is not a fundamental right. We further hold that the 2.0 rule does not violate the Constitution of the State of Montana.
Affirmed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON and GULBRANDSON concur.