JUSTICE NELSON
specially concurs.
I concur in our analysis and in the result of our decision, and I have, accordingly, signed our opinion. I write separately only to set forth my position on two points, one of which is mentioned in our opinion.
First, in the context of the narrow legal question that was at issue in State, ex rel., Bartmess v. Board of Trustees (1986), 223 Mont. 269, 726 P.2d 801, and in the context of the legal issue here, I agree that a student’s participation in extracurricular school activities is not a fundamental right and that using middle tier analysis is justified. We have correctly so limited our analysis to those facts.
Beyond the narrow issues addressed in Bartmess and in the instant case, however, I do not want my agreement with our opinion to be read *163 as any sort of concession that a Montanan’s rights under Article X, Section 1, of the Montana Constitution, to equal educational opportunity and to “a basic system of free quality public elementary and secondary” education are anything but fundamental rights.
As our opinion points out, Montanans, uniquely, are constitutionally guaranteed important equal public education rights. Moreover, the legislature is obligated by our constitution to provide the mechanism that will enable each person in this State to exercise those rights to effectuate the goal of the people of this state “to establish a system of education which will develop the full educational potential of each person.” Art. X, Sec. 1, Mont.Const.
In that context, and as to those rights, I believe that such rights are, indeed, fundamental. In truth, when one considers the obvious fact that, without a quality education, a person’s ability to exercise his or her other constitutional rights is severely circumscribed, then it becomes readily apparent just how fundamental the educational rights set forth in Article X, Section 1, really are. In our modem, technological, information-oriented society one’s constitutional right to seek gainful employment, to vote, to express one’s views, to pursue life’s basic necessities, to acquire and possess property and to seek safety, health and happiness, all, in a very real sense, depend upon a person’s education. And these are but just a few of the constitutional rights which Montanans enjoy. Simply put, educational rights are fundamental because they are rights without which other constitutional rights would have little meaning. See Butte Community Union v. Lewis (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311-13.
Second, as to the precise question at issue in the instant case, I would also conclude that Article X, Section 6, of the Montana Constitution prevents a public school district from allowing sectarian school students to participate in district activities. This provision of Montana’s Constitution provides:
Aid prohibited to sectarian schools. (1) The legislature, counties, cities, towns, school districts, and public corporations shall not make any direct or indirect appropriation or payment from any public fund or monies, or any grant of lands or other property for any sectarian purpose or to aid any church, school, academy, seminary, college, university, or other literary or scientific institution, controlled in whole or in part by any church, sect, or denomination. (Emphasis added).
Article X, Section 6, which was carried over from our 1889 Constitution, represents the Constitutional Convention’s strong and con *164 tinuing belief in the necessity to maintain Montana’s public school systems apart from any entanglements with private sectarian schools and to guard against the diversion of public resources to sectarian school purposes. As Delegate Burkhardt stated:
The primary and significant advantage secured by the present provision is the unequivocal support it provides for a strong public school system. The traditional separation between church and state, an important part of the American social framework, has also become a fundamental principle of American education. The growth of a strong, universal, and free educational system in the United States has been due in part to its exclusively public character. ... Any diversion of funds or effort from the public school system would tend to weaken that system in favor of schools established for private or religious purposes.
Montana Constitutional Convention, verbatim transcript, March 11, 1972, Vol. VI at pages 2008-09.
If Tami is allowed to participate in the public school sports programs, it is clear to me that the School District will be providing aid, either directly or indirectly, to the Conrad Christian School in violation of this express prohibition of Montana’s Constitution. This is so because sectarian schools derive their operating funds, for the most part, from tuition or church resources. To the extent that a sectarian school determines that it cannot afford, for example, a volleyball program, or a chemistry lab, or a band from these private sources, such schools can shift the financial burden of such programs to the public treasury by sending sectarian school students to the public school volleyball program, chemistry lab or band. In short, the public school district ends up effectively subsidizing the sectarian school’s educational program. This is precisely what Article X, Section 6, prohibits — indirect aid to sectarian schools.
Moreover, Montana’s constitutional prohibition against aid to sectarian schools is even stronger than the federal government’s. The former expressly prohibits either direct or indirect aid, while the latter prohibits aid which is found to be “direct.” See, e.g., Sloan v. Lemon (1973), 413 U.S. 825, 832, 93 S.Ct. 2982, 2987, 37 L.Ed.2d 939, 945, reh’g denied 414 U.S. 881, 94 S.Ct. 30, 38 L.Ed.2d 128 (tuition subsidies to parents of parochial students struck down) and Meek v. Pittenger (1975), 421 U.S. 349, 363, 95 S.Ct. 1753, 1762-63, 44 L.Ed.2d 217, 230, reh’g denied 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 702 (direct loan of instructional materials has effect of advancing religion), and compare State ex rel. Chambers v. School *165 District No. 10 (1970), 155 Mont. 422, 472 P.2d 1013 (Article XI, Section 8, of Montana’s 1889 Constitution, the predecessor of Article X, Section 6, prevents the busing of parochial students even though busing was permissible under the federal constitution).
Accordingly, while I concur fully in our analysis and in our opinion, I am also convinced that Montana’s Constitution expressly prohibits what Tami and the Conrad Christian School hoped to accomplish in this litigation. The School District may not allow her to participate in its programs unless she enrolls in the public school system.
JUSTICE LEAPHART concurs in the foregoing special concurrence.