JUSTICE REGNIER
delivered the Opinion of the Court.
¶1 Rob Grabow sought a declaratory judgment and injunctive relief against the Montana High School Association (the “MHSA”) in the First Judicial District Court, Lewis and Clark County. The court denied Grabow’s request, and he immediately appealed. We granted his request for a preliminary injunction by our Order dated December 23,1999. On the merits of his appeal, we declared one issue moot but remanded to the District Court on the others. On remand, the District Court ruled against Grabow. Grabow appeals and we affirm.
¶2 The following issues are dispositive of this appeal:
¶3 1. Did our Order of December 23, 1999, entitle Grabow to attorney’s fees?
¶4 2. May the Livingston School District contract with the MHSA to consent to be bound by the MHSA’s rules?
BACKGROUND
¶5 For purposes of this appeal, we will summarize the facts, which we more fully set forth in Grabow v. Montana High Sch. Ass’n, 2000 MT 159, ¶¶ 6-13, 300 Mont. 227, ¶¶ 6-13, 3 P.3d 650, ¶¶ 6-13.
¶6 Grabow enrolled at Park High School in Livingston, Montana, in the fall of 1999. After he enrolled, the MHSA informed Grabow that he could not participate in basketball because of its semester rule. The semester rule essentially states that students each have eight consecutive semesters within which they may participate in MHSA contests. Grabow, the MHSA determined, did not meet this requirement.
¶7 The MHSA is a nonprofit association that has existed since 1921. It supervises, regulates and administers interscholastic activities between its member high schools. Delegates from the member schools meet each year to conduct the business of the MHSA, which a staff and seven member Board of Control then administer. The MHSA classifies schools into four classifications; each of which, along with the Montana School Boards Association, Office of Public Instruction and Governor, elects one member of the Board of Control.
¶8 All public and private high schools in Montana that the Montana *95 Board of Public Education accredits may join the MHSA. Membership is voluntary and has consisted of 182 public and private schools during the relevant times of this appeal. Park High School, which Grabow attended, is a member of the MHSA. The Board of Trustees (the “Board”) for the school district in which Park High School is located meets each year to consider and vote on whether to rejoin the MHSA. Each year, the Board renews its membership by signing a membership form.
¶9 Before the MHSA’s annual meeting, the Board receives and considers any proposed changes to the MHSA’s rules and regulations. The Board then instructs its representative on how to vote. As a member of the MHSA, the Livingston School District also had the power to submit proposed changes at the MHSA’s annual meeting.
¶10 Grabow filed a complaint with the District Court seeking relief from the MHSA’s decision to declare him ineligible to play basketball. The District Court ruled against Grabow, and Grabow appealed. On appeal, we dismissed portions of Grabow’s appeal as moot. We remanded, however, Grabow’s claims that he was entitled to attorney’s fees and that the Board had unlawfully delegated its discretionary functions to the MHSA. The District Court ruled against Grabow on both issues. Grabow now appeals.
STANDARD OF REVIEW
¶11 When reviewing a district court’s conclusions of law, we determine whether they are correct. See Montanans for the Responsible Use of the School Trust v. State ex rel. Board of Land Comm’rs, 1999 MT 263, ¶ 11, 296 Mont. 402, ¶ 11, 989 P.2d 800, ¶ 11; Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.
ISSUE ONE
¶12 Did our Order of December 23,1999, entitle Grabow to attorney’s fees?
¶13 Grabow argues that our December 23,1999, Order, which granted him a preliminary and permanent injunction, entitles him to attorney's fees under 42 U.S.C. § 1988 and the private attorney general doctrine. We disagree.
¶14 To receive attorney’s fees under § 1988, a party must prevail in an action to enforce 42 U.S.C. § 1983. See 42 U.S.C. § 1988. The District Court concluded that Grabow had not “prevailed” in this case for purposes of § 1988 because he had not received a final judgment in his favor. Although Grabow cites several cases that support his argument that receiving injunctive relief amounts to prevailing under *96 § 1988, his claim still must fail. Even if an award of injunctive relief amounts to prevailing under § 1988, our order granting him that injunctive relief had nothing to do with § 1983.
¶15 Although Grabow alleges that his Complaint clearly set forth a § 1983 claim, it carried no reference to § 1983 or § 1988. Instead, his Complaint cited only the Montana Constitution and Montana case law. Grabow nevertheless argues that, although his Complaint contained no reference to § 1983 or § 1988, the parties extensively briefed and argued the issue of attorney’s fees under § 1988 before the District Court. The District Court, however, consistently ruled against him. He thus clearly cannot claim that he “prevailed” there.
¶16 As for our Order granting him injunctive relief, we never cited § 1983, § 1988 or any other federal law. Instead, we cited exclusively Montana law, like Grabow did in his Complaint. We thus conclude that Grabow did not prevail under § 1983 and, therefore, is not entitled to attorneys fees under § 1988.
¶17 Without a specific contractual or statutory grant, Montana law typically does not entitle the prevailing party to an award of attorney fees. See Foy v. Anderson (1978), 176 Mont. 507, 511, 580 P.2d 114, 116. Courts have created exceptions to this rule, including the private attorney general exception. See School Trust, ¶ 67. Grabow asserts that our Order entitles him to attorneys fees under the three-part test that we set forth in School Trust. That case, however, involved a controversy in which the party seeking attorneys fees had prevailed on the merits before the district court, which we later affirmed. We will not address the issue of attorneys fees until a party reaches a final determination of the underlying controversy in their favor. See Dreyer v. Board of Trustees (1981), 193 Mont. 95, 99, 630 P.2d 226, 228.
¶18 Here, the District Court neither issued a preliminary injunction nor reached the merits of Grabow’s claim. In our Order on Grabow’s petition, we granted an injunction in favor of Grabow but noted only that Grabow had shown a likelihood of prevailing on the merits of his appeal. On appeal, we decided that Grabow’s constitutional argument had become moot.
¶19 Grabow cites several non-Montana cases supporting his argument that he prevailed in this matter. None, however, bear on the private attorney general exception as established under Montana law. We have clearly held that awarding attorney’s fees without a determination of the merits against the other party “violates the most fundamental right of due process - the right to appear and be heard on the merits of their adversaries’ complaint.” See Dreyer, 193 Mont. at 101, 630 P.2d at 229.
*97 ¶20 Because our Order did not involve § 1983 and never reached the merits of Grabow’s claim, we conclude that it does not entitle Grabow to attorney’s fees.
ISSUE TWO
¶21 May the Livingston School District contract with the MHSA to consent to be bound by the MHSA’s rules?
¶22 The Montana Constitution vests school board trustees with the power to supervise and control the schools in their district. See Mont. Const. Art. X, § 8. The Montana Code, in turn, authorizes trustees to adopt policies and perform any duties necessary to carry out their legal requirements. See generally §§ 20-3-323 & -324, MCA. The pivotal question in this appeal is what powers do trustees have regarding interscholastic athletics.
¶23 The difficulty in answering this question arises in that the Montana Legislature provides only a single reference to extracurricular activities. Section 20-5-201(3), MCA, allows school trustees to exclude students from participating in “school activities” as a sanction for violating school duties. Grabow interprets this code section to mean that the board of trustees has the exclusive power to decide a student’s eligibility to participate in extracurricular activities. We disagree.
¶24 Section 20-5-201, MCA, enumerates certain duties to which a pupil must adhere. If a student violates these duties, that code section sets forth sanctions to which a pupil may become subject. The subsection that Grabow relies on, subsection (3), states that “[i]n addition to the sanctions prescribed in this section, the trustees of a high school district may deny a high school pupil the honor of participating... in school activities.” Grabow argues that this language entitles only trustees to preclude students from participating in school activities.
¶25 The scope of this subsection, however, is more limited than that. Under subsection (3), a trustee may only take action when an “incident or infraction causing the consideration has been investigated and the trustees have determined that the high school pupil was involved in the incident or infraction.” Section 20-5-201(3), MCA. Here, no one alleges that Grabow committed an incident or infraction. Section 20-5-201(3), MCA, is simply not applicable to this matter. As we noted above, the Montana Code is otherwise silent as to the enforcement of eligibility rules.
¶26 Students clearly have the right to participate in extracurricular activities. See Moran v. School Dist. No. 7, Yellowstone County (D. *98 Mont. 1972), 350 F.Supp. 1180, 1184. That right to participate in extracurricular activities is a right that is subject to constitutional protection. See State ex rel. Bartmess v. Board of Trustees of Sch. Dist. No. 1 (1986), 223 Mont. 269, 275, 726 P.2d 801, 805. Some entity or group of entities, therefore, must implicitly have the power to govern the various aspects of extracurricular activities, of which interscholastic sports is a part.
¶27 Grabow argues, however, that the Board unlawfully delegates the authority to govern interscholastic activities by violating a student’s right to administrative appeal. The Board allegedly does this by binding itself to the MHSA’s rules and decisions. Grabow points out that § 20-3-210, MCA, states that the county superintendent “shall hear and decide all matters of controversy... as a result of decisions of the trustees.” Under the MHSA’s structure, however, students have no mechanism of administrative appeal from an MHSA decision. Grabow contends that the Board thus divests students of their right to review by leaving final decision making authority with the MHSA. Because the legislature never granted school boards the power to delegate decision making authority to the MHSA, Grabow asserts that this delegation is unlawful.
¶28 Other jurisdictions are split on the issue of whether a voluntary membership in a high school athletic association is an unlawful delegation of authority. Compare Quimby v. School Dist. No. 21 of Pinal County (Ariz. Ct. App. 1969), 455 P.2d 1019 (concluding that becoming a member of ¿n association was not a delegation of governmental power) with Bunger v. Iowa High Sch. Athletic Ass’n (Iowa 1972), 197 N.W.2d 555 (concluding that membership was a delegation of power). Ultimately, we find the Quimby line of reasoning more persuasive. We conclude that becoming a member of the MHSA is not an unlawful delegation of a governmental power.
¶29 Competitive interscholastic athletics requires rules for competition. See Quimby, 455 P.2d at 1021. The MHSA establishes its rules through the vote of its members. If a school board disagrees with any of the rules, it may refuse to participate in the MHSA. Accordingly, the school district makes the rules of the association its own by participating. See Quimby, 455 P.2d at 1021-22; Anderson v. South Dakota High Sch. Activities Ass’n (S.D. 1976), 247 N.W.2d 481, 484.
¶30 We acknowledge that a school district would undoubtedly have a difficult time finding other schools against which to compete if it decided to withdraw from the MHSA. Such a consequence, however, does not render membership in the MHSA involuntary. Instead, it *99 simply highlights the nature of organized athletics. Interscholastic competition would simply not exist unless some independent entity serves as a neutral arbiter to establish and monitor eligibility rules and the ground rules for play. While the consequences may weigh on a district’s decision to withdraw from the MHSA, the district still remains free to do so.
¶31 While school districts may adopt the MHSA’s eligibility rules as their own, enforcement of these rules is a unique power derived through mutual agreement that no individual school board possesses. School boards have no power of supervision or control over schools outside their own school district. See Mont. Const. Art. X, § 8 (stating that supervision and control by trustees exist “in each school district” (emphasis added)). The Helena School Board, for instance, could not enforce eligibility rules on students in Park High School in Livingston. School boards thus must establish a neutral referee. In reality, eligibility rules do not exist to ensure that a district’s own students meet certain requirements. Such rules ensure that the students of a competing district abide by the rules.
¶32 The MHSA is thus exercising a power over students that individual school boards never had. Therefore, although the Board adopted the MHSA rules as their own, the MHSA’s decision to exclude Grabow from participating in basketball, in effect, was not the Board’s own decision. The other school districts effectively made the decision. Section 20-3-210, MCA, only applies to “matters of controversy arising in the county.” (emphasis added). Therefore, Grabow has no right to administrative appeal of MHSA decisions under § 20-3-210, MCA.
¶33 To remedy this lack of administrative review, Grabow suggests that we order the Office of Public Instruction (the “OPI”) to review all of the MHSA’s decisions regarding eligibility. No authority, however, empowers the OPI to review decisions made by the MHSA. Without a specific legislative mandate, we will not create an additional level of administrative review. “[T]o the extent that there is an error and to the extent that the statute does not accurately reflect the Legislature’s clearly expressed intention, it is appropriate that the Legislature correct the problem, not the courts.” George v. Montana Bd. of Pardons, 2001 MT 163, ¶ 20, 306 Mont. 115, ¶ 20, 30 P.3d 1065, ¶ 20 (citing State v. Goebel, 2001 MT 73, ¶ 23, 305 Mont. 53, ¶ 23, 31 P.3d 335, ¶ 23).
¶34 While the MHSA may not be accountable to the OPI, any decisions made by the MHSA still must comply with the constitution. Simply creating an additional level of administrative review will not ensure this. Adding additional levels of review instead may work to a *100 student’s detriment.
¶35 An aggrieved student cannot seek judicial review of an administrative decision until the student has exhausted his or her administrative remedies. See § 2-4-702, MCA. This rule allows administrative agencies to make a factual record and to correct any errors within their specific expertise before a court interferes. See Bitterroot River Protection Ass’n v. Bitterroot Conservation Dist., 2002 MT 66, ¶ 22, 309 Mont. 207, ¶ 22, 45 P.3d 24, ¶ 22. We do this in the interest of both judicial economy and agency efficiency. See Bitterroot, ¶ 22. If we required a student to navigate through additional levels of administrative review, however, the athletic season in which the student wished to play would likely pass.
¶36 As the system functions now, students may immediately seek judicial review after the MHSA has reached a final conclusion. Grabow, for instance, got what he ultimately sought by directly seeking judicial review: an injunction that allowed him to play basketball. In reaching our conclusion in this matter, we wish to emphasize that we neither endorse nor criticize the function of the MHSA or its eligibility rules. The sole issue before us was whether the Livingston School District could contract with the MHSA and thus be bound by its rules; we conclude that it can.
¶37 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES TRIEWEILER and COTTER concur.