FILED

04/22/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0293

DA 25-0293

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 86

ZAYNE HERT; AMBER HERT and KELLY
HERT, Legal Parents to Zayne Hert,

      Plaintiffs and Appellants,

    v.

THE MONTANA HIGH SCHOOL
ASSOCIATION; BRIAN MICHELOTTI –
EXECUTIVE DIRECTOR OF THE MHSA,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                In and For the County of Rosebud, Cause No. DV 23-53
                Honorable Rennie L. Wittman, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Nick LeTang, Passamani & LeTang, PLLC, Helena, Montana

      For Appellees:

          Elizabeth A. O'Halloran, Kaleva Law Office, Missoula, Montana

                    Submitted on Briefs:  December 17, 2025

                             Decided:  April 22, 2026

Filed:

                      _____
                             Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Zayne Hert, Amber Hert, and Kelly Hert appeal from the February 25, 2025 Order on Cross-Motions for Summary Judgment issued by the Sixteenth Judicial District Court, Rosebud County. The District Court determined Zayne's claims related to the Montana High School Association (MHSA)[1] declaring him ineligible to play basketball as a fifth-year senior during the 2023-24 season were moot after the season was completed.

¶2 We address the following restated issues on appeal:

1. *Is this case moot?*

2. *Did the District Court err when it granted summary judgment in favor of the MHSA?*

¶3 We determine the case is not moot pursuant to the public interest exception to the mootness doctrine and that the District Court erred by granting summary judgment in favor of the MHSA on that ground. We further hold that Montana students have constitutional protections in participation in offered extracurricular activities, that the District Court erred by reducing that constitutional right to a privilege or contractual interest, and that MHSA failed to provide Zayne with constitutionally sufficient due process when it failed to provide notice of the issue, evidence, and timely written notice of its determination

---

[1] "MHSA is a non-profit association incorporated under the laws of Montana. Membership in MHSA is voluntary, and is comprised of public and private high schools in Montana . . . . MHSA has the exclusive authority and responsibility for supervising and controlling all phases of interscholastic programs among its member schools. MHSA prohibits member schools from allowing any student to participate in interscholastic athletics if that student is ineligible to participate under MHSA rules and bylaws, and it has the power to sanction and penalize member schools which allow ineligible students to participate." *J.M. v. Mont. High Sch. Ass'n*, 265 Mont. 230, 232-33, 875 P.2d 1026, 1028 (1994).

sufficient for judicial review by a court. We reverse and remand for entry of declaratory relief consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Zayne began attending Colstrip High School (CHS) as a freshman in the fall of 2019. He participated in extracurricular activities during the 2019-20 school year, including playing basketball. As a sophomore during the 2020-21 school year, Zayne virtually attended CHS due to the Covid-19 pandemic. Zayne struggled with remote learning and failed several of his classes, leading him to be academically ineligible to participate on the basketball team that season. Near the end of the school year, Kelly spoke with the now-former CHS athletic director, Andrew Torgerson, seeking to find out if Zayne would be eligible to play basketball as a fifth-year senior should he repeat his sophomore year. Torgerson informed Kelly he thought Zayne would be eligible, but would look into it further and let him know. Torgerson and Kelly, who has coached sports at CHS for several years, did not discuss the matter further. Amber and Kelly decided to have Zayne repeat his sophomore year and graduate in five years, rather than attempting to take extra credits to graduate in four.

¶5 Zayne repeated his sophomore year during the 2021-22 school year. His grades improved enough to regain academic eligibility and he returned to the basketball team. Zayne again played basketball for CHS during the 2022-23 school year, his fourth year of high school. Near the end of that school year, CHS Principal Robin Nansel informed Zayne he would not be eligible to compete in MHSA activities during his upcoming fifth year of

high school in 2023-24.  The MHSA did not contact Zayne directly to inform him of his

ineligibility.  Under MHSA's Article II, § 8, Rule 8.1:

> A student will be eligible to participate in Association Contests for four (4) consecutive years [eight (8) consecutive semesters] after entering the ninth grade.  Enrollment of twenty (20) pupil instruction days during a ninth grader's first semester in high school constitutes his/her first semester of attendance.  A ninth grader who is enrolled fewer than twenty (20) pupil instruction days in his/her first semester of high school does not begin his/her eight (8) consecutive semesters unless he/she has participated during this time in an Association contest.  Such a period of fewer than twenty (20) pupil instruction days is not considered to be "the last previous semester attended" under Section (2).

This rule is known as the Semester Rule.  The Herts appealed Zayne's ineligibility for the

2023-24 school year to the MHSA, as allowed by the MHSA's Article I, § 5, Rule 5.3:

> The Executive Board may authorize the Executive Director to make decisions as necessary for the proper operation of Association business.  The Executive Board shall hear all appeals of decision by the Executive Director and may affirm, reverse or modify a decision of the Executive Director.  On appeal, the Executive Board may, at its sole discretion, waive or modify the application of a rule in emergency or exceptional circumstances if it determines that the application of a rule as written would not substantially serve the intent or purpose of the rule.  However, in no event may a rule be waived or modified by the Executive Board unless all of the following conditions are affirmatively shown to clearly exist:
>
> a. The emergency or exceptional circumstances were entirely beyond the control of the student, the student's parents or guardians, and, if relevant, the student's school; and
>
> b. The granting of relief will not prejudice the rights or opportunities of other students or other member schools; and
>
> c. The granting of relief will not violate any parts of the underlying purpose of the rule involved.

On May 22, 2023, Principal Nansel sent a letter to the MHSA Executive Board, explaining Zayne's story and noting the Herts were "not appealing the age or academic rules, they are appealing the semester rule."

¶6 The MHSA's Executive Board heard Zayne's appeal during a Zoom hearing on August 16, 2023. The Herts presented their case for waiver to the Board, which unanimously voted to deny their request at the close of the hearing. The Board orally informed the Herts the request was denied at that time, but did not publicly deliberate or elaborate on its reasoning for denying Zayne's waiver request. The MHSA did not send a written notice of its decision to Zayne or the Herts, but did send a letter to CHS Principal Nansel on August 17, 2023, informing her the Board "denied the request to waive the MHSA Semester Rule" and that "Zayne will be ineligible to practice or participate at any level of competition for his remaining high school career."

¶7 On August 17, 2023, Amber emailed Brian Michelotti, Executive Director of the MHSA, asking (1) for the Board's reasoning behind denying Zayne's appeal; (2) whether the meeting was recorded; (3) whether Zayne had exhausted all avenues to appeal the Board's decision; (4) whether there was an investigation into whether CHS staff had misled the Herts when Torgerson said he thought Zayne would be eligible as a fifth-year senior; and (5) whether the Covid-19 pandemic was taken into consideration. Amber also sought clarification on what the exceptions to the Semester Rule were. Michelotti did not respond to this email, so Amber emailed him again on August 28, 2023, seeking answers to her previous questions and asking "how to get on the agenda for discussion on this matter to appeal the boards decision." On August 30, 2023, Michelotti responded to Amber's second

5

email, informing her that "individual Board members may or may not comment on their decision at the time of the meeting" and providing a copy of MHSA's Rule 5.3.

¶8 On November 1, 2023, the Herts filed their initial Verified Complaint for Judicial Review, Declaratory Relief, and Preliminary and Permanent Injunctive Relief, followed by an Emergency Motion for Preliminary Injunction on November 9, 2023. A hearing was set for November 29, 2023, but it was vacated because the Herts had failed to name the MHSA as a defendant.[2] The Herts thereafter filed their Second Amended Complaint on November 29, 2023, naming MHSA as a defendant. The District Court set a hearing on the preliminary injunction request for January 17, 2024. At that hearing, the court heard testimony from Zayne, Amber, Kelly, MHSA Executive Director Michelotti, and MHSA Executive Board President Steve Thennis.[3]

¶9 On January 25, 2024, the District Court issued its Findings of Facts, Conclusions of Law and Order Denying Emergency Motion for Preliminary Injunction, Denying MHSA's Motion to Dismiss and Granting Nansel's Motion to Dismiss. In this order, the court determined Zayne was "not entitled to judicial review" of the Executive Board's decision and that MHSA was not required to issue "reasoned, detailed opinions" of its decisions regarding petitions for waiver. The court further concluded that participation in extracurricular activities was not a constitutional right; that the Semester Rule passed

---

[2] In both their initial and first amended complaint, the Herts named only MHSA Executive Director Michelotti and CHS Principal Nansel as defendants.

[3] The District Court also heard the pending motions to dismiss the MHSA, Michelotti, and Nansel. Near the end of the hearing, counsel for the Herts stipulated to the dismissal of Michelotti as a party.

constitutional muster; and the MHSA's procedures in this case did not violate Zayne's right to due process. The Herts thereafter filed a petition for supervisory control with this Court on February 5, 2024. We denied their petition the next day, noting both that they failed to meet their burden to demonstrate the writ should issue and that the denial of their motion for a preliminary injunction was an immediately appealable order under M. R. App. P. 6(3)(e). *Hert v. Sixteenth Jud. Dist. Ct.*, No. OP 24-0070, Order (Mont. Feb. 6, 2024). The Herts did not appeal the denial of their motion for a preliminary injunction. In the spring of 2024, CHS's basketball season finished and Zayne graduated from high school.

¶10 On October 31, 2024, MHSA filed a motion for summary judgment, asserting the Herts's remaining claims were moot following the completion of the 2023-24 basketball season and Zayne's graduation from high school. MHSA also asserted the Semester Rule was constitutional and Zayne received sufficient due process in his appeal to the MHSA. The Herts filed their motion for summary judgment on November 1, 2024, asserting the "MHSA's actions deprived Zayne of his constitutional interest/right to participate in extracurricular activities in violation of the Montana Constitution." The District Court did not hold oral argument on the competing motions for summary judgment and issued its Order on Cross-Motions for Summary Judgment on February 25, 2025. The District Court expressly incorporated its previous findings of fact and conclusions of law from its January 25, 2024 order denying the Herts's motion for a preliminary injunction, and determined the "issues presented and the requests for declaratory judgment made by the Plaintiffs are completely moot," and MHSA was entitled to judgment as a matter of law.

¶11 The Herts appeal. Additional facts will be discussed as necessary below.

7

**STANDARD OF REVIEW**

¶12     Whether a case is moot presents a question of law, which we review for correctness. *In re Big Foot Dumpsters & Containers, LLC*, 2022 MT 67, ¶ 7, 408 Mont. 187, 507 P.3d 169.

¶13     We review a district court's grant or denial of summary judgment de novo, applying the same criteria as M. R. Civ. P. 56.  *CB1 v. Hove*, 2025 MT 36, ¶ 9, 420 Mont. 380, 564 P.3d 434.  Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *CB1*, ¶ 9.

**DISCUSSION**

¶14     *1.  Is this case moot?*

¶15     In the spring of 2024, the CHS basketball season ended and Zayne graduated from high school.  At that point, though his suit against the MHSA was still pending, no court could order Zayne be allowed to play in the 2023-24 high school basketball season because it was over and there were no more games to be played.  Later in 2024, both the Herts and MHSA filed motions for summary judgment in this case.  The District Court agreed with the MHSA that the case was moot and accordingly granted summary judgment in MHSA's favor.

¶16     "The judicial power of Montana's courts is limited to justiciable controversies." *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 16, 364 Mont. 390, 276 P.3d 867 (collecting cases).  A justiciable controversy is one "that can be disposed of and resolved in the courts."  *Ramon v. Short*, 2020 MT 69, ¶ 20, 399 Mont. 254, 460 P.3d 867.  Over the years, the "central concepts of justiciability have been elaborated into more specific

8

doctrines—namely, advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions—each of which is governed by its own set of substantive rules." *Progressive Direct Ins. Co.*, ¶ 16. The relevant consideration we must address here is the concept of mootness. "Where an issue presented at the outset of the action 'has ceased to exist or is no longer "live," or if the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position, then the issue before the court is moot.'" *Ramon*, ¶ 20 (quoting *Gateway Opencut Mining Action Grp. v. Bd. of Cnty. Comm'rs*, 2011 MT 198, ¶ 16, 361 Mont. 398, 260 P.3d 133).

¶17 "Mootness is a threshold issue which we must resolve before addressing the substantive merits of a dispute." *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 31, 333 Mont. 331, 142 P.3d 864 (citing *Grabow v. Mont. High School Ass'n*, 2000 MT 159, ¶ 14, 300 Mont. 227, 3 P.3d 650 (*Grabow I*)). This Court recognizes several exceptions to the mootness doctrine. *Ramon*, ¶ 21. The Herts assert two such exceptions are applicable in this case: (1) the "capable of repetition, yet evading review" exception and (2) the public interest exception.

¶18 "Under the wrongs 'capable of repetition, yet evading review' exception, the invoking party must show that 'the challenged conduct inherently is of limited duration, so as to evade review, and that there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *In re Bigfoot Dumpsters & Containers*, ¶ 16 (quoting *Havre Daily News*, ¶ 34) (internal citation omitted). The conduct challenged here—MHSA's determination Zayne was not eligible to play basketball during the 2023-24

9

season and its actions related to that determination—is inherently of limited duration and it did evade review during the 2023-24 basketball season. Where the Herts's argument the "capable of repetition, yet evading review" exception applies in this case fails, however, is that there is no reasonable expectation Zayne could be subject to the same action again. Zayne has graduated from high school and no longer seeks to be allowed to play high school basketball. Accordingly, the "capable of repetition, yet evading review" exception to the mootness doctrine does not apply to the Herts's claims. While Zayne himself will not again be subject to MHSA eligibility determinations, the challenged procedures are inherently short in duration and repeatedly arise in similar circumstances. Accordingly, although the "capable of repetition" exception does not apply in the strictest form, the public interest exception is properly invoked to resolve recurring issues that otherwise evade review.

¶19    Though the "capable of repetition, yet evading review" exception to the mootness doctrine does not apply here, we do note that, for decades, this Court (and the district courts below) have been presented with lawsuits from student athletes challenging MHSA's eligibility determination as applied to themselves. Over 30 years ago, in *J.M. v. Mont. High Sch. Ass'n*, 265 Mont. 230, 875 P.2d 1026 (1994), where a student had been declared ineligible due to the MHSA's four season rule but granted a temporary restraining order and preliminary injunction by the district court allowing him to play football, we stated that "given the amount of time inherent in the litigation process, and given our reluctance to entertain original proceedings and special writs except under extraordinary circumstances, it would be nearly impossible for any case such as this to ever reach this

10

Court, via the usual litigation/appeal process, within the time during which the injunction was in effect. To mechanically apply the doctrine of mootness under such circumstances would effectively deny the remedy of appeal. Where MHSA will, undoubtedly, be faced with future challenges to its maximum participation rules on issues and facts such as those presented here, it has a right to a final decision of this Court on the merits of its appeal." *J.M.*, 265 Mont. at 241-42, 875 P.2d at 1033. We therefore consider whether the public interest exception to mootness applies. A few years after *J.M.* we referenced that decision in another eligibility case (though one involving the NCAA, not the MHSA) a few years later, noting that, "in *J.M.*, a decision from this Court that the issue was moot would have essentially denied the MHSA all opportunity to have the validity of its regulations affirmed. Moreover, it would have permitted J.M., as well as all other student-athletes who were likely to subsequently come before the MHSA with similar claims, to prevail while they evaded review altogether." *Van Troba v. Mont. State Univ.*, 1998 MT 292, ¶ 42, 291 Mont. 522, 970 P.2d 1029. Subsequently, in his *Grabow I* dissent, Justice Nelson recognized the problem continued:

> The constitutional issues raised in this case are important and are capable of repetition, yet will likely always escape review.
>
> When a student athlete is deprived of his or her perceived right to take part in some sport in spite of MHSA's eligibility rules, the student can sue. Typically, the student is successful in obtaining an injunction allowing his or her participation in the sport. Naturally, by the time the case makes its way to this Court on appeal, the season is over, the student has graduated, and the matter is moot as a technical matter.
>
> Unfortunately, by mechanically applying the mootness doctrine in these types of cases, the legal issues presented never get resolved despite the fact that the same issues can be raised in the future in the same manner by a

different litigant. The result is that the losing party's remedy of appeal is continually nullified.

*Grabow I*, ¶¶ 22-24 (Nelson, J., dissenting). And when Grabow himself returned to this Court two years later, Justice Nelson again described the inherent challenges involved with eligibility challenges:

> Unfortunately, since the existing statutory procedure is worthless, these sorts of cases, with some non-substantial deviations, ultimately require students and their parents to hire counsel and sue for temporary or preliminary injunctive relief in district courts when the student is deprived of his or her actual or perceived right to participate in an interscholastic sporting activity. Typically injunctive relief is granted (if not by the trial court, by this Court) so the student can play--eligible or not. By the time the legal proceedings have finally run their course, the student has graduated (or, at least, has finished the season), and about all that is left is for this Court to engage in the essentially meaningless task of affirming or reversing the trial court, or deciding not to decide the case at all.

*Grabow v. Mont. High Sch. Ass'n*, 2002 MT 242, ¶ 65, 312 Mont. 92, 59 P.3d 14 (Nelson, J., dissenting) (collecting cases) (*Grabow II*).

¶20 Both the MHSA and the students subject to its eligibility rules deserve a final decision on the merits of this appeal, as the Herts raise important questions related to the due process the MHSA is or is not providing to students who are declared ineligible to compete by the MHSA. "This Court 'reserves to itself the power to examine constitutional issues that involve broad public concerns to avoid future litigation on a point of law.'" *Ramon*, ¶ 21 (quoting *Walker v. State*, 2003 MT 134, ¶ 41, 316 Mont. 103, 68 P.3d 872). Accordingly, the public interest exception to the mootness doctrine applies when: "(1) the case presents an issue of public importance; (2) the issue is likely to recur; and (3) an

answer to the issue will guide public officers in the performance of their duties." *Ramon*, ¶ 21 (citing *Gateway Opencut*, ¶ 14).

¶21 The MHSA's eligibility decisions, and the due process provided to those impacted by them, are issues of public importance. Article X, Section 1, of the Montana Constitution provides that the State has "the goal . . . to establish a system of education which will develop the full educational potential of each person," and this Court has held that "extracurricular activities are part of the educational process[.]" *State ex rel. Bartmess v. Bd. of Trs. of Sch. Dist. No. 1*, 223 Mont. 269, 272-73, 726 P.2d 801, 803 (1986). While "limitations on maximum eligibility for participation have generally been upheld," *J.M.*, 265 Mont. at 237, 875 P.2d at 1031 (collecting cases), "once interscholastic sports are offered, they acquire the protection from an unconstitutional deprivation." *J.M.*, 265 Mont. at 238, 875 P.2d at 1031 (citing *Bartmess*, 223 Mont. at 275, 726 P.2d at 804-05). While the right to participate in extracurricular activities is "not a fundamental right under the Montana Constitution," it nevertheless "is clearly subject to constitutional protection[.]" *Bartmess*, 223 Mont. at 275, 726 P.2d at 805.

¶22 As noted above, the issues presented in this case are likely to recur. *Grabow I*, issued over 25 years ago, involved a similar challenge to the MHSA's Semester Rule. In that case, because Grabow had graduated, we determined the issue was "completely moot" and declined to address his challenge to the rule. *Grabow I*, ¶ 18. And yet, here we are, presented with a case which began, in part, with a challenge to the Semester Rule. Challenges to other MHSA eligibility rules have also been occurring for decades. *See J.M.*, 265 Mont. at 233, 875 P.2d at 1028 (challenging both the Semester Rule and the "four

13

season" rule); *see also Bartmess*, 223 Mont. at 271, 726 P.2d at 802 (challenging a Helena school district academic eligibility policy adopted in accordance with an MHSA regulation which permitted member schools to adopt more stringent policies than the base MHSA grade point average).

¶23    Finally, an answer to the issues raised in this case will guide both the MHSA and the courts by providing "authoritative guidance on an unsettled issue," *Ramon*, ¶ 24, regarding both what due process is constitutionally required of MHSA when determining a student is ineligible to compete and the (potential) judicial review of those decisions. Without guidance from this Court, "the problems will repeat themselves." *Walker*, ¶ 43.

¶24    Accordingly, we hold this case is not moot pursuant to the public interest exception to the mootness doctrine. But for an application of this exception to the mootness doctrine, the issues "threaten to go unresolved" due to the inherently brief nature of an MHSA ineligibility determination and the inability to get these questions before this Court until after the season has ended and/or the student has graduated. *Ramon*, ¶ 26.

¶25    *2. Did the District Court err when it granted summary judgment in favor of the MHSA?*

¶26    This case is not moot pursuant to the public interest exception and the District Court erred by granting MHSA summary judgment on that ground. By incorporating its previous findings from its preliminary injunction order, the District Court also erred on the merits of the case.

¶27    In its summary judgment order, the District Court specifically incorporated its Findings of Fact and Conclusions of Law it issued when denying Zayne's request for a

14

preliminary injunction. Those included conclusions that (1) there is no constitutional right to participate in extracurricular sports, (2) an ineligible student is not entitled to judicial review of the MHSA's Executive Board decision, and (3) that MHSA was not required to issue written findings related to its determination on a petition for waiver. Each of these determinations are incorrect.

¶28 First, while the right to participate in extracurricular activities is "not a fundamental right under the Montana Constitution," it "is clearly subject to constitutional protection[.]" *Bartmess*, 223 Mont. at 275, 726 P.2d at 805. As we held over 30 years ago, "once interscholastic sports are offered, they acquire the protection from an unconstitutional deprivation." *J.M.*, 265 Mont. at 238, 875 P.2d at 1031 (citation omitted). The District Court was wrong to reduce this constitutional right to a mere contractual privilege.

¶29 Second, Montana students impacted by an MHSA eligibility decision "may immediately seek judicial review after the MHSA has reached a final conclusion." *Grabow II*, ¶ 36. This is because "any decisions made by the MHSA . . . must comply with the constitution." *Grabow II*, ¶ 34. In *Grabow II*, we specifically rejected a request to order the Office of Public Instruction to review all MHSA decisions regarding eligibility, noting that creating an additional level of administrative review would not ensure that MHSA's decisions complied with the constitution but could work to a student's detriment because "[i]f we required a student to navigate through additional levels of administrative review, however, the athletic season in which the student wished to play would likely pass." *Grabow II*, ¶¶ 33-35.

15

¶30 This leads us to the third point—for meaningful judicial review of MHSA's decisions, there must be a meaningful record for a court to review. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972). Accordingly, when presented with a due process claim, we examine the facts of the given case. *State v. West*, 2008 MT 338, ¶ 33, 346 Mont. 244, 194 P.3d 683.

¶31 The facts of this case show Zayne was not provided with sufficient due process in his interactions with the MHSA. Neither Zayne nor his parents were notified by the MHSA that he would be ineligible to compete, that information was relayed second-hand by CHS administration to the Herts. MHSA did not directly inform Zayne of which rule he was determined to be ineligible under prior to his appeal hearing, did not provide Zayne with the documents and evidence it was relying on prior to the appeal hearing, did not verbally inform Zayne of the reasons his appeal was denied at the hearing, and did not provide Zayne or his parents with written documentation of the final denial of his appeal following the hearing—again, sending only a letter noting Zayne's appeal had been denied (without specifying why) to CHS Principal Nansel.

¶32 Zayne, like all other students who are denied eligibility by the MHSA, was allowed to "immediately seek judicial review after the MHSA has reached a final conclusion." *Grabow II*, ¶ 36. But because the MHSA provided no written record regarding the reasons for its determination, Zayne was essentially forced to fly blind when seeking judicial review of MHSA's decision. The MHSA's actions in this case clearly fall short of the due process required to those the MHSA determines are ineligible to participate in

16

extracurricular activities. "[O]nce interscholastic sports are offered, they acquire the protection from an unconstitutional deprivation." *J.M.*, 265 Mont. at 238, 875 P.2d at 1031 (citation omitted). A student who is declared ineligible to compete by the MHSA must be provided with notice of the issue, evidence, and timely written notice of the MHSA's determination sufficient for review by a court.

¶33 Unlike in both *J.M.* and *Grabow*, Zayne was not granted a preliminary injunction which allowed him to compete. The 2023-24 season came and went and he graduated without playing another high school basketball game for CHS. Because no court can now restore his participation in that season, individualized injunctive relief is no longer available. That does not, however, eliminate the availability of declaratory relief under § 27-8-201, MCA.

¶34 Because the issues presented are likely to recur yet evade review, and because MHSA's procedures govern thousands of Montana students, declaratory relief remains both meaningful and appropriate. A declaratory judgment will clarify that once extracurricular activities are offered students have a constitutional protection against unconstitutional deprivation of the right to participate in extracurricular activities and are entitled to procedures sufficient to permit judicial review of adverse eligibility determinations. In short, students must receive the due process to which they are entitled— notice of the issue, evidence, and timely written notice of MHSA's determination sufficient for review by a court.

¶35 Although Zayne's graduation forecloses any effective injunctive relief restoring participation in the 2023-24 basketball season, this does not render harmless the District

17

Court's legal errors. Because this case is justiciable under the public interest exception to the mootness doctrine, and because Appellants sought declaratory relief independent of participation in a completed season, this Court must resolve the constitutional questions presented. We therefore reverse the District Court's grant of summary judgment on mootness grounds and address the merits of Appellants' declaratory claims.

¶36 The appropriate remedy is limited and prospective. We do not revisit MHSA's substantive eligibility determination or the validity of the Semester Rule, which is not challenged on appeal, and we do not grant relief specific to Zayne Hert, whose eligibility has expired. Instead, we hold that, when MHSA applies discretionary waiver criteria affecting a student's constitutionally protected interest in participation in offered extracurricular activities, procedural due process requires, at minimum: (1) notice of the issues to be decided; (2) a meaningful opportunity to be heard; and (3) a record and written decision sufficient to permit judicial review. The absence of a reviewable record and written decision in this case fails to satisfy those minimum constitutional requirements.

## CONCLUSION

¶37 This case is not moot pursuant to the public interest exception to the mootness doctrine and the District Court erred by granting summary judgment in favor of the MHSA on that ground. Montana students have constitutional protections in participation in offered extracurricular activities, the District Court erred by reducing that constitutional right to a privilege or contractual interest, and MHSA failed to provide Zayne with constitutionally sufficient due process when it failed to provide notice of the issue, evidence, and timely written notice of its determination sufficient for judicial review.

18

¶38   We reverse the District Court's order granting MHSA summary judgment on mootness grounds.   We remand for entry of declaratory judgment consistent with this Opinion, clarifying MHSA's minimum procedural obligations in eligibility appeals involving discretionary waiver determinations.   No further relief is warranted.

/S/ INGRID GUSTAFSON

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE

Justice Jim Rice, concurring.

¶39   Article II, Section 17, of the Montana Constitution provides: "No person shall be deprived of life, liberty, or property without due process of law."   Herts' briefing contends that "MHSA denies that Montana students have any constitutional due process protections because (as the MHSA argues) the MHSA *is not a state actor* and there is no protected life, liberty, or property interest that triggers a due process analysis.   Therefore, the MHSA argues that it need only follow its own operational rules (and not the Montana Constitution) as any other private board might, . . . "   (Emphasis added.)   In response, the MSHA does not deny it is a state actor, but argues only that, "[e]ven if Appellants' arguments regarding due process afforded by the MHSA appeal procedure were properly before this Court . . . Appellants cannot establish a failure of due process."

19

¶40     The Court describes MHSA as "a non-profit association incorporated under the laws of Montana," Opinion, ¶ 1 fn. 1, and we have also previously described MHSA as "a private, voluntary association of public and private schools in Montana." *Valley Christian Sch. v. Mont. High Sch. Ass'n*, 2004 MT 41, ¶ 3, 320 Mont. 81, 86 P.3d 554.  Generally, a private entity is not subject to the requirements of constitutional due process.  *See Goble v. Mont. State Fund*, 2014 MT 99, ¶ 46, 374 Mont. 453, 325 P.3d 1211 ("[P]rocedural due process requires consideration of three distinct factors: (1) the private interest that will be affected by the *official action . . . .*") (quotation marks and citation omitted; emphasis added); *Goble*, ¶ 40 ("[T]he Due Process Clause contains a substantive component which bars arbitrary *governmental actions*, regardless of the procedures used to implement them, and serves as a check on oppressive *governmental action*.") (quotation marks and citation omitted; emphasis added).  The U.S. Supreme Court describes this distinction as follows: "Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S. Ct. 454, 461 (1988).

¶41     However, a private entity may be treated as a government actor and be required to meet due process requirements under certain circumstances,[1] including "pervasive

---

[1] A common inquiry conducted by federal courts is whether a private action "can fairly be attributed to the State," *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 2785 (1982), or if there is a "close nexus between the State and the challenged action." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S. Ct. 449, 453 (1974).  A classic example is when a private

entwinement" between the private entity and the state. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 291, 121 S. Ct. 924, 927-28 (2001) ("We hold that the association's regulatory activity may and should be treated as state action owing to the pervasive entwinement of state school officials in the structure of the association."). The U.S. Supreme Court granted certiorari in *Brentwood* to review conflicting decisions by a U.S. District Court and the Sixth Circuit Court of Appeals about whether the Tennessee Secondary School Athletic Association (TSSAA or Association) was a state actor. *Brentwood*, 531 U.S. at 294, 121 S. Ct. at 929. The U.S. District Court had "found that the State had delegated authority over high school athletics to the Association, characterized the relationship between the Association and its public-school members as symbiotic, and emphasized the predominantly public character of the Association's membership and leadership." *Brentwood*, 531 U.S. at 293, 121 S. Ct. at 929. The Sixth Circuit reversed, reasoning the U.S. District Court "was mistaken in seeing a symbiotic relationship between the State and the [TSSAA]" and because the TSSAA "was neither engaging in a traditional and exclusive public function nor responding to state compulsion." *Brentwood*, 531 U.S. at 294, 121 S. Ct. at 929.

¶42    The U.S. Supreme Court described the TSSAA as a "not-for-profit membership corporation organized to regulate interscholastic sport among the public and private high schools in Tennessee that belong to it," with public schools accounting for 84% of its membership. *Brentwood,* 531 U.S. at 291, 121 S. Ct. at 928. The Supreme Court

---

entity performs a function that has traditionally been exclusively reserved to the government, such as a company managed town. *See Marsh v. State of Ala.*, 326 U.S. 501, 66 S. Ct. 276 (1946).

concluded the TSSAA was a state actor for reasons including that (1) the Association was overwhelmingly composed of public schools and was run by public school officials who acted in their official capacities when governing the Association; and (2) the public schools provided funding to the TSSAA and used the TSSAA as the vehicle to carry out their own governmental responsibility to regulate interscholastic athletics. *See Brentwood*, 531 U.S. at 298-302, 121 S. Ct. at 932-34. Consequently, "[t]he nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings." *Brentwood*, 531 U.S. at 298, 121 S. Ct. at 932.[2]

¶43 Here, the MHSA mirrors the TSSAA in material respects, including that there is the kind of "pervasive entwinement" with the State of Montana sufficient to treat the MHSA as a state actor. The MHSA describes itself as the "governing body for interscholastic activities in the state of Montana" and has 182 member high schools, most of which are public entities that provide funding to the MHSA through membership fees. Its Executive Board is largely comprised of public-school officials and includes a position titled "Governor's Office Representative." The Executive Board exercises "general supervision over all activities of member schools" and has authority to "adopt and make changes as deemed necessary in the rules and regulations." In *Valley Christian Sch.,* ¶ 7,

---

[2] In contrast to statewide high school athletic associations such as the TSSAA, the NCAA has not been treated as a state actor, in part, because NCAA's rules derive from a collective, multi-state membership, rather than from any single state. *See Tarkanian*, 488 U.S. at 193, 109 S. Ct. at 462-63. However, the U.S. Supreme Court noted in dictum that this result "would, of course, be different if the [NCAA's] membership consisted entirely of institutions located within the same State, many of them public institutions created by the same sovereign." *Tarkanian*, 488 U.S. at 193 n.13, 109 S. Ct. at 463.

we noted that, "[f]or purposes of this appeal, MHSA concedes that, although it is a private association, it meets the criteria of a 'state actor.'"

¶44 For these reasons, I concur with the Court's conclusion that the MHSA must here comply with the procedural due process requirements of the Montana Constitution. Opinion, ¶ 36. The process of making the eligibility decision at issue—a request for a waiver under the Semester Rule, and not a direct challenge to it—must therefore have comported with minimum procedural due process protections, which were not afforded herein.

/S/ JIM RICE